377 P.2d 490

**La Mar PEAY, Plaintiff and Appellant,**

**v.**

**BOARD OF EDUCATION OF PROVO CITY SCHOOL DISTRICT et al., Defendants and Respondents.**

**No. 9722.**

Supreme Court of Utah.

Dec. 31, 1962.

Nielsen, Conder & Hansen, Salt Lake City, for appellant.

Morgan & Payne, Young, Young & Sorensen, Provo, for respondents.

CROCKETT, Justice.

Plaintiff as a taxpayer sued to have what is called the "voted leeway" school financing program, enacted by the 1961 Legislature (Chap. 104, S.L.U.1961), adjudged to be unconstitutional; and to have declared void an election held pursuant to it which approved additional school financing for the Provo City School District. The trial court granted defendants' motion to dismiss and the plaintiff appeals.

The section of that chapter (53–7–24)—all references to statutes correlate to U.C.A.1953 unless otherwise indicated—with which we are concerned provides in part:

> "With the consent of a majority of the electors of the district voting at an election or elections held for that purpose in the manner set forth in section 53–2–12, Utah Code Annotated 1953, any district may maintain a school program in excess of the cost of the program referred to in sections 53–7–22 and 53–7–23 above."

The plaintiff asserts that this statute is so uncertain and ambiguous as to be void because Section 53–2–12, to which it refers, deals only with general powers and duties of the State Board of Education and has nothing to do with the manner of holding elections. This incongruity exists and for that reason the statute as written would be meaningless and unworkable. However, it is obvious that the reference to 53–2–12 is in error and that the reference should have been to 53–7–12. That this is true is apparent from these facts: the other two references in the newly enacted statute are to Chapter 7 of Title 53 which deals with the Uniform School Fund. When this stat-

ute in question, 53–7–12, was passed, it supplanted 53–7–8 dealing with the same subject, which latter section was repealed. The repealed statute referred to 53–7–12 at the same spot where the new statute refers to 53–2–12. Section 53–7–12 does deal with special tax elections and therefore does correlate and make sense when considered in connection with the new section (53–7–24) with which we are concerned. The conclusion is thus inescapable that the insertion of the 2 instead of the 7 was in error, and that the intention was to refer to 53–7–12 instead of 53–2–12. We are in agreement with the defendants' contention that in the case of such a patent error the statute must be so interpreted and applied as to fulfill its obviously intended purpose.[1]

The plaintiff further argues that if it be assumed that Sec. 53–7–24 refers to 53–7–12 as we have concluded above, it is still ambiguous because it imposes no property tax qualification to vote; whereas the sections it refers to do prescribe such qualification; and also urges that in any event the election held was void because no such qualification for voting was required.

We are not persuaded that the statute in question is so ambiguous as to be inoperable. It certainly can be agreed that it would have been much better to set out more specifically the manner in which such elections should be held. But proceeding upon the premise that 53–7–24 states that the election shall be in the manner "set forth in section 53–[7]–12," the latter section in turn states that the election procedure shall be as provided "in elections for the issuance of bonds so far as applicable." This can only refer to Chapter 10 of Title 53, U.C.A.1953 (Sections 53–10–1 to 21 inclusive) which deals with creating indebtedness and the issuance of bonds for school districts. Whether the correct procedure is regarded as that set out in Sections 2 through 6 of that chapter, which the defendants contend for and purport to have followed, or that set out in Sections 7 through 12, which the plaintiff contends for and which we think correct because it expressly deals with the issuance of bonds, it will be noted that a property tax qualification is required of voters in such elections.[2]

1. Norville v. Tax Commission, 98 Utah 170, 97 P.2d 937, 126 A.L.R. 1318; Chez ex rel. Weber College v. Building Commission, 93 Utah 537, 74 P.2d 687; Morrison-Merrill & Co. v. Industrial Commission, 81 Utah 363, 18 P.2d 295.
2. Sec. 53–10–5, Qualification of voters— *"Every registered voter * * * who shall have paid a property tax in such* district in the year next preceding such election shall be entitled to vote * * *."

Sec. 53–10–11, Qualification of voters —*"Every registered voter * * * who shall have paid a property tax therein in the year next preceding such election shall be entitled to vote * * *."*

■ The defendants' position, that there is no property tax qualification necessary to vote in the election in question, can only be made plausible by placing emphasis on that portion of Section 53–7–12 which states that the procedure shall be as provided in elections *"for the issuance of bonds so far as applicable";* and then arguing that inasmuch as 53–7–24 does not expressly require property tax qualification, the portion of the statutes dealing with the issuance of bonds, which impose such qualification, is inapplicable to this election. To accept this argument it would be necessary to give effect to one part of Sec. 53–10–11, which deals with qualification of voters for bond elections, and to ignore the rest of it. That section reads:

> "53–10–11. Qualification of voters— Challenges.—*Every registered voter* residing in any municipal ward or school representative precinct in which any election is held for the purpose of determining the question of issuing bonds for the school district *who shall have paid a property tax* therein in the year next preceding such election shall be entitled to vote at any such election. Challenges for cause by any qualified voter shall be allowed at such election and promptly decided by the judges conducting the same."

Thus to adopt this theory would render operative only the last sentence, dealing with challenges, and the remainder would have to be disregarded. This is squarely contrary to the well-established rule that statutes will not be severed and considered piecemeal, but must be given effect in their entirety whenever possible.[3]

■ There is another consideration which we think has some persuasive force favoring the view that the taxpayer qualification to vote in this election is required. Where there is uncertainty as to the correct interpretation of a statute it is permissible to look to the surrounding circumstances and background to determine what was intended.[4] In that connection it is legitimate to take cognizance of legislative policy as demonstrated in the closely analogous situations involving the incurring of indebtedness by school districts dealt with in Chapter 10 of Title 53, which we have referred to above.

In Sec. 53–10–1 we read:

> " * * * but no debt in excess of the school taxes for the current year shall be created by the board of education of any school district unless the proposition to create such debt shall have been submitted to a vote of *such qualified electors as shall have paid a property tax therein within the twelve*

---

3  See Dunn v. Bryan, 77 Utah 604, 299 P. 253; Glenn v. Ferrell, 5 Utah 2d 439, 304 P.2d 380.

4.  See Kent Club v. Toronto. 6 Utah 2d 71, 305 P.2d 780.

*calendar months next preceding such election * * *."*

A similar requirement is found in 53–10–2:

" * * * such district may cause the proposition to incur and create such additional indebtedness to be submitted to a vote of *such qualified electors as shall have paid a property tax in any such school district in the year preceding such election."*

and in 53–10–5:

"Every registered voter * * * *who shall have paid a property tax in such district in the year next preceding such election* shall be entitled to vote at any such election. * * *"

It seems consistent with the policy indicated in these related sections for the legislature to have required that the "voted leeway" program, which must of course also involve tax increases, be approved by property-taxpaying voters. If it had been intended otherwise, the statute under scrutiny (53–7–24) could plainly and simply have provided for such an election by majority of the voters and stopped there. But that is not what was presented to nor passed by the legislature. The statute goes on to say that the election should be in the manner set forth in other sections, as has been spelled out above. Analysis of these statutes results in the conclusion that the voting must be by the taxpayers who will bear the burden. It also seems logical to believe that this was the foundation upon which the legislature based its enactment of 53–7–24. Furthermore, as so interpreted that statute is not uncertain or ambiguous but is sufficiently definite to be workable.[5]

▮ Plaintiff makes a further attack upon the election on the ground that the public notice required by the statute (Sec. 53–10–9(4)) was insufficient. Without reciting its other details, its gist so far as material here is that the notice must clearly inform the voters of the proposal to be voted upon.[6]

The notice given read as follows:

"Shall the Board of Education of Provo City, State of Utah, be authorized to maintain a 'voted leeway' program as provided in section 11, Chapter 104, Laws of Utah, 1961, not to exceed ten percent (10%) of the *minimum basic program* provided by law."

The difficulty lies in the emphasized phrase "minimum basic program" which literally applied is an anomaly. The "basic" school program is defined in Section 53–7–16(b) and includes "[t]he amount derived by multiplying the number of distribution units for each school district by $5,400.00; and (2) the cost of state-supported transportation * * *";

---

5. That statute should be so interpreted. See Kent Club v. Toronto, footnote 4, supra.

6. This is also the general rule: 79 C.J.S. Schools and School Districts, p. 93.

whereas the "minimum" school program as defined in Section 53–7–16(a) is broader and includes the "basic state-supported program" plus "state-supported leeway program" and several additional costs set forth in detail in that subsection.

Because the "minimum" program is thus something entirely different from the "basic" program, the voter could not have known whether he was being asked to approve a "voted leeway" of 10% of the "minimum" school program or of the "basic" program. The use of the term "minimum basic program" in the notice rendered it ambiguous and incomprehensible to laymen, or to anyone. In fact, the more one knew about it, the more confusing the phrase would be. Therefore the notice did not fulfill its function of clearly indicating to the voters the issue presented.

Upon the basis of the foregoing discussion it is our opinion that the statute under attack authorizing "voted leeway" financing programs for school districts is not unconstitutional; but that it requires property taxpayer qualification for voting at the election provided for therein; and that the public notice must clearly indicate the proposal to be voted upon. Because these requirements were not met, the election held must be, and is hereby, declared void and of no effect. Costs to plaintiff (appellant). (Emphasis ours throughout.)

WADE, C. J., and HENRIOD, McDONOUGH, and CALLISTER, JJ., concur.