Dennis M. SILVER, SN 529–
54–3166, Petitioner,

v.

AUDITING DIVISION OF the STATE
TAX COMMISSION of Utah,
Respondent.

No. 890138.

Supreme Court of Utah.

Aug. 30, 1991.

Kent B. Alderman, Salt Lake City, for petitioner.

R. Paul Van Dam, Leon A. Dever, Salt Lake City, for State Tax Com'n.

ZIMMERMAN, Justice:

Dennis M. Silver petitions for review of a final decision of the Utah State Tax Commission ("the Commission") ordering him to pay a $1,000–per–year penalty for failing to file tax returns during the years 1978 to 1983. Silver claims that the penalty requires a showing of fraudulent intent and should not be imposed because the record contains no evidence that he had such an intent to evade the tax or filing requirement, as required by section 59–14A–92(5) of the Code. Utah Code Ann. § 59–14A–92(5) (Supp.1986). We agree. We reverse the Commission and find that the penalty was improperly assessed.

On August 16, 1984, Silver was ordered by Mr. Rodahl, a compliance auditor with the Commission, to file within thirty days state income tax returns for the years 1977 to 1983. On September 19, 1984, Rodahl extended the time for Silver to file the returns. Silver did not file by the expira-

tion of this deadline. Several months passed without any communication between the Commission and Silver. During this period, Silver had difficulty in reconstructing past records and contacted an accountant and bookkeeper to help him prepare the returns.

On July 1, 1985, Silver's case was transferred from Rodahl to Ms. Milligan. She reviewed Silver's file, noted that the returns had not yet been filed, and initiated writ of mandate proceedings against Silver in the district court. The writ was issued, and Silver was required to file the returns by September 25, 1985. He did not meet the deadline. He sought and received two more extensions from Ms. Milligan. When he still had not filed at the expiration of the second of these deadlines, Milligan obtained an order from the district court directing him to file the returns by April 25, 1986, or be held in contempt of court.

On April 25th, Silver filed all the returns except the 1981 return, which was filed shortly thereafter. The Commission, acting under authority of section 59–14A–92(5) of the Code, imposed the $1,000 penalty on Silver for the late filing of each return, contending that Silver had acted with the intent to evade the filing requirement. Silver appealed to the full Commission. Silver also asked the Commission to waive the requirement contained in section 59–1–505 of the Code that before one can seek review of a commission penalty order, one must deposit the full amount of the penalty with the Commission. *See* Utah Code Ann. § 59–1–505 (1987). The Commission upheld the penalty assessments, reasoning that Silver's conduct and the lack of proper record keeping provided sufficient evidence to support the conclusion that he had no intention of filing during the years in question. The Commission also denied the waiver request.

Silver petitioned this court to review the order. Unable to pay the deposit required by section 59–1–505, Silver filed for bankruptcy protection. The Commission filed a claim against Silver's estate for the amount of the penalties. On Silver's motion, the bankruptcy court lifted the automatic stay to allow this court to rule on the state tax issues.

The Commission then filed a motion to dismiss the appeal for several reasons, including failure to comply with the deposit requirement of section 59–1–505. Silver opposed the motion, arguing that the deposit requirement is unconstitutional because it denies due process of law under the Utah State and United States Constitutions and access to the courts under article I, section 11 of the Utah Constitution. We denied the Commission's motion and reserved the ruling on the issues raised until after full presentation before this court.

On the merits, Silver argues that the penalties were imposed improperly. First, he argues that the statute requires a showing of "fraudulent" intent to evade. Second, and relatedly, he contends that the Commission failed to meet its evidentiary burden on intent. Third, he contends that the Commission did not follow the appropriate procedures in assessing the penalty. Our disposition of the first of these questions disposes of this matter.

■ Before addressing the issues on appeal, we must first consider the section 59–1–505 deposit requirement. By filing a claim in Silver's chapter 13 bankruptcy plan, the Commission has submitted itself to payment under the plan. The purpose of chapter 13 is to enable an individual with court supervision and protection to develop and perform under a plan for the repayment of debts over an extended period of time. In some cases, the plan will call for full payment; in others, it may offer creditors a percentage of their claims in full settlement. Whatever the nature of the Commission's ultimate claim, it has submitted itself to the chapter 13 process by filing a claim, and the tax penalty is subject to any confirmed plan and will be satisfied or discharged according to the plan. The bankruptcy court has approved the Commission's claim pending the outcome of these proceedings. We therefore find that the section 59–1–505 deposit requirement is satisfied by the Commission's claim in Silver's chapter 13 plan.

We next turn to the merits of the issues on appeal. They revolve around the mean-

ing to be given section 59–14A–92(5) of the Code. Section 59–14A–92 gives the Commission authority to impose various penalties upon taxpayers who fail to do what is required of them under the law. Subpart (5) of section 59–14A–92 provides for a civil penalty of up to $1,000 for the failure to make a return if it is done with "intent to evade" the filing requirement. Specifically, it states:

(5) Any person who, *with intent to evade* any tax or any requirement of this chapter, or any lawful requirement of the State Tax Commission, fails to pay the tax, or to make, render, sign, or verify any return, or to supply any information, within the time required by or under this chapter, or who, *with like intent,* makes, renders, signs, or verifies any false or fraudulent return or statement, or supplies any false or fraudulent information, is liable to a civil penalty of not more than $1,000 to be recovered by the State Tax Commission in the same manner as provided in this chapter for the collection of delinquent taxes, and is also guilty of a class B misdemeanor and shall be fined not to exceed $500 or be imprisoned not to exceed three months, or both. The fines provided by this section shall be additional to all other penalties in this chapter.

Utah Code Ann. § 59–14A–92 (Supp.1986) (emphasis added).

Silver's first contention is that the Commission erred when it imposed a series of $1,000 penalties upon him for failing to file timely. He argues that before a penalty can be imposed under subpart (5), the Commission must find that the delinquent taxpayer acted with "fraudulent intent," that is, "intent to deceive" that goes beyond mere mistake, negligence, or gross negligence. *See* 37 C.J.S. *Fraud* § 22 (1943). Silver concedes that he did not intend to file returns, but that this state of mind was based on an understanding, apparently mistaken, that he was not obligated to file under state or federal law.

The Commission takes the position before this court that "no fraud or intent to defraud was alleged, no fraud needed to be shown, and no fraud penalty was imposed."

It characterizes subpart (5) as imposing a "civil evasion penalty without regard to any ... intent to defraud." In the Commission's view, it is enough that Silver sought to evade what in fact were the law's filing requirements. Consistent with this position, the Commission, in its findings of fact, conclusions of law, and final decision below, characterized Silver's state of mind as one in which he had "no intention of filing returns or keeping the proper records to determine income for the years in question." Based upon this finding, the penalties were imposed.

█ Before addressing the question of the state of mind required by subpart (5) of 59–14A–92, we set out the appropriate standard of review. The interpretation of the language of section 59–14A–92 is a pure question of law upon which the technical expertise of the agency and its experience in administering the tax laws will be of no real assistance. Therefore, we give no deference to the Commission's decision that subpart (5) does not require fraudulent intent and review that determination for correctness. *See Savage Indus., Inc. v. Tax Comm'n,* 811 P.2d 664, 666–67 (Utah 1991); *see also Chris & Dick's Lumber & Hardware v. Tax Comm'n,* 791 P.2d 511, 513–14 (Utah 1990); *Hurley v. Board of Review of Indus. Comm'n,* 767 P.2d 524, 526–27 (Utah 1988).

Because this action was commenced before the effective date of the Utah Administrative Procedures Act ("UAPA"), Utah Code Ann. §§ 63–46b–1 through –22 (1990), we do not apply that statute, but we do note that the standard would be the same under UAPA as it is under pre–UAPA case law. *Savage,* 811 P.2d at 670.

Moving to the merits of Silver's claim, we address the proper construction of section 59–14A–92(5). We first look to the plain language of the statute as the best expression of legislative intent. *Chris & Dick's,* 791 P.2d at 514; *Allisen v. American Legion Post No. 134,* 763 P.2d 806, 809 (Utah 1988). In construing the statute, we follow the rule that the terms of a statute should not be interpreted in a piecemeal fashion, but as a whole. *Amax Magnesium Corp. v. Tax Comm'n,* 796 P.2d 1256,

1258 (Utah 1990); *Peay v. Board of Ed. of Provo City Schools,* 14 Utah 2d 63, 66, 377 P.2d 490, 492 (1962). We also construe tax statutes liberally in favor of the taxpayer. *Salt Lake County v. Tax Comm'n,* 779 P.2d 1131, 1132 (Utah 1989); *Builders Components Supply Co. v. Cockayne,* 22 Utah 2d 172, 175, 450 P.2d 97, 99 (1969).

▪ Section 59–14A–92(5) requires that one have an "intent to evade" a tax or legal requirement before one is exposed to the penalty of up to $1,000 imposed by that section. The usual meaning of the term "intent" is that one must have a conscious objective or desire to accomplish the prohibited end. *See* Utah Code Ann. § 76–2–103(1) (1990). The object of the required intent under section 59–14A–92(5) is "to evade" the requirements of the tax laws. "Evade" is defined as avoidance of something by effort, skill, dexterity, contrivance, subterfuge, ingenuity, or artifice. 31 C.J.S. *Evade* (1964). We read the term "intent to evade," then, to require a conscious desire to avoid a legal requirement with which the actor knows he or she is obligated to comply; it is not sufficient that the actor merely intends not to do that which the law, in fact, may require. In short, an intent not to file a tax return, even though required by law to file, is an "intent to evade" only if the actor is aware that he or she is legally required to file. This suggests a meaning not distinguishable from the "fraudulent intent" argued for by Silver.

This reading of subpart (5) is confirmed by comparison with the other parts of section 59–14A–92. Subpart (1) explicitly states that its penalty will be imposed only if the taxpayer acts "without fraudulent intent."[1] Subparts (3),[2] (4),[3] and (5) all require intent to commit an act. It is true that subparts (3), (4), and (5) do not explicitly require a showing of fraudulent intent. However, the juxtaposition of the express lack of such a requirement in subpart (1) with the silence of subparts (3), (4), and (5) suggests that the legislature intended there to be a fraudulent intent requirement in subparts (3), (4), and (5). This conclusion is further supported by the fact that the penalty under subpart (1) is significantly less than the penalties under (3), (4) and (5). For example, violation of subpart (1), which is done without fraudulent intent, is punishable by a fine of $50. A violation of subpart (3) allows for a fine of between $1,000 and $25,000 and up to five years in prison, depending upon the amount of tax that has not been remitted. A violation of subpart (4) imposes criminal sanctions for fraud that are classified as either second or third degree felonies. *See* Utah Code Ann. § 76–6–501. Finally, violation of subpart (5) is punishable by a civil fine of up to $1,000 and by a criminal fine of up to $500 and/or three months in jail.

▪ Based on the foregoing, we conclude that the penalty imposed under section 59–14A–92(5) is a fraud penalty and

1. Section 59–14A–92(1) states:
    (1) Every person who, without fraudulent intent, fails to make, render, sign, or verify any return, or to supply any information within the time required by or under the provisions of this chapter, is liable to a penalty of $50 to be imposed, assessed, and collected by the tax commission in the same manner as is provided by this chapter with regard to delinquent taxes. This $50 penalty does not apply to returns disclosing a refund until 90 days after the date the return is due. After 90 days the penalty shall be half the refund or $50, whichever is less. If a refund return is filed and the gross income reported is less than the minimum state filing requirement, no penalty may be applied.
   Utah Code Ann. § 59–14A–92(1) (Supp.1986).

2. Subsection (3) outlines a series of fines imposed for failing to timely remit the full amount

of tax "with intent to evade any tax." Section 59–14A–92(3) states in pertinent part, "It is unlawful for any person, with intent to evade any tax, to fail to timely remit the full amount of tax required by this chapter." Utah Code Ann. § 59–14A–92(3) (Supp.1986).

3. Subsection (4) makes it a "crime" to "knowingly or intentionally" make a false or fraudulent return or provide false or fraudulent information. Section 59–14A–92(4) states, "Any person who knowingly or intentionally makes, renders, signs, or verifies any false or fraudulent return or statement or supplies any false or fraudulent information is guilty of the crime of making a false or inconsistent statement and is punishable as otherwise provided by law." Utah Code Ann. § 59–14A–92(4) (Supp.1986). The penalty for fraud is found in section 76–6–501. Utah Code Ann. § 76–6–501 (1990).

that before it can be imposed, there must be a showing of what can be characterized as a fraudulent intent to avoid the requirements of the tax act.

This ruling disposes of the case before us. The Tax Commission viewed subpart (5) as imposing no requirement of fraudulent intent. In fact, in its brief before this court it concedes that no such intent had been shown. The Commission saw the penalty as a "civil evasion penalty." Because it applied the wrong standard to Mr. Silver's conduct, the imposition of the penalty cannot stand. It may be that Silver is liable for some other, lesser penalty, a point we do not address, but that is a matter for the Commission.

For the reasons stated above, we reverse the final decision of the Commission.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

HOWE, Associate Chief Justice, dissenting:

I dissent. I would sustain the Tax Commission's decision that Silver had an "intent to evade" the filing of income tax returns, which intent is a prerequisite to the imposition of the $1,000 penalty imposed in section 59–14A–92(5). As correctly pointed out in the majority opinion, an "intent to evade" requires a conscious desire to avoid a legal requirement with which the actor knows he or she is obligated to comply. Silver contends that he did not believe that he was required to file Utah income tax returns because his federal adjusted gross income was below the filing requirement. He also contends that he did not believe he owed any federal tax. However, the Commission found that Silver had

> no intention of filing returns or keeping the proper records to determine the income for the years in question. The Petitioner did not even have proper bookwork available to know what his income and expenses were for that period of time.... In fact, the implication is clear that the Petitioner had no intention of filing returns or keeping the proper records to determine the income for the years in question.

I believe the Commission could lawfully draw the conclusion that Silver had an intent to evade the filing of returns, as defined in the majority opinion, based on his lack of record keeping. Whether this requisite "intent to evade" is or is not equivalent to a fraudulent intent, a question the majority treats, is irrelevant here.