**Larry J. ZISSI, Petitioner,**

v.

**STATE TAX COMMISSION OF UTAH, Respondent.**

**No. 890317.**

Supreme Court of Utah.

Oct. 27, 1992.

---

David J. Bird, Salt Lake City, for Zissi.

R. Paul Van Dam, Leon A. Dever, Salt Lake City, for Tax Com'n.

ZIMMERMAN, Justice:

Petitioner Larry J. Zissi seeks a writ of review of a decision of the State Tax Commission. The Commission assessed $44,000 in penalties and taxes against Zissi, finding that he had failed to pay the taxes that Utah's Illegal Drug Stamp Tax Act ("the Stamp Act") imposes on the purchase, acquisition, transportation, or importation of controlled substances. *See* Utah Code Ann. §§ 59–19–101 to –107. Before this court, Zissi challenges the Commission's fact-finding and its construction of the Stamp Act, the constitutionality of the Stamp Act, and the constitutionality of the

roadblock at which sheriff's deputies found the controlled substances giving rise to the taxes and penalties. Zissi argues that because the roadblock stop amounted to an unconstitutional seizure, the exclusionary rule should have prevented the Commission from admitting in evidence the approximately 550 amphetamine tablets the deputies had seized from his truck.

We hold as follows: first, that Zissi has not shown that the Commission's fact-finding was against the substantial weight of the evidence; second, that the Commission properly construed the Stamp Act; third, that the Stamp Act survives Zissi's constitutional challenges; fourth, that the roadblock stop and subsequent search of Zissi's truck violated the Utah Constitution; and fifth, that the exclusionary rule barred the admission of the amphetamine tablets at the Commission hearing. Because the Commission should not have admitted the illegally seized amphetamine tablets in evidence, we reverse its decision.

■ We first state the facts. Because a party appealing from an order of an administrative agency bears the burden of demonstrating that the agency's factual determinations are not supported by substantial evidence, *see id.* § 63–46b–16(4)(g), we state the facts and all legitimate inferences drawn therefrom in the light most favorable to the agency's findings. *Cf. First Nat'l Bank of Boston v. County Bd. of Equalization of Salt Lake County*, 799 P.2d 1163, 1165 (Utah 1990). We state the facts in this case accordingly.

On June 4, 1988, Zissi's pickup truck was stopped at a roadblock set up by the Utah County Sheriff on State Road 73 outside Fairfield, Utah. While Zissi was at the roadblock, one of the officers detected a strong odor of marijuana coming from the truck. The officers directed Zissi to pull over to the side of the road. They then inquired whether he had any marijuana in his vehicle. After initially denying that he did, Zissi produced a small plastic bag of marijuana and a marijuana cigarette he had

been smoking. The officers then searched his truck and found a shaving bag and a briefcase behind the seat. The shaving bag contained approximately 550 amphetamine tablets, and the briefcase contained $24,440. Zissi pleaded no contest to criminal charges brought against him as a result of the roadblock and subsequent search.

After the Utah County Sheriff's office advised the Commission of the arrest, the Commission began proceedings against Zissi for taxes and penalties due under the Stamp Act. The Stamp Act taxes controlled substances and requires dealers to affix official stamps on the controlled substances as evidence of taxes paid.[1] *See* Utah Code Ann. § 59–19–104(2). Zissi's amphetamines did not bear the official stamp. At a hearing before the Commission, Zissi argued that the search of his truck was unconstitutional and that the evidence of his amphetamines should be suppressed. Stating that it did not have the authority to determine the constitutionality of the search, the Commission admitted the amphetamines in evidence and assessed a tax of $22,000 on the drugs and a penalty of $22,000 for Zissi's failure to pay the drug taxes and affix the official stamps to the amphetamines.

■ Before discussing Zissi's challenges to the Commission's ruling, we note the appropriate standard of review. The Utah Administrative Procedures Act ("UAPA"), *id.* §§ 63–46b–1 through –22, governs our review of Commission decisions. *See id.* § 63–46b–1(1); *Savage Indus., Inc. v. Utah State Tax Comm'n*, 811 P.2d 664, 668–69 (Utah 1991). Zissi challenges one of the Commission's factual determinations. The UAPA requires us to uphold an agency's factual findings if such findings are supported by substantial evidence based upon the record as a whole. *See* Utah Code Ann. § 63–46b–16(4)(g). Zissi's remaining claims raise issues of law, which we review for correctness under the

---

**1.** Amphetamines are included within the statutory definition of "controlled substances." *See*

Utah Code Ann. §§ 58–37–2(4), –4(2).

UAPA.[2] *See id.* § 63–46b–16(4)(d); *Savage Indus., Inc.,* 811 P.2d at 669–70. We now turn to the merits.

■ We begin with Zissi's argument that the Commission erred in making a factual finding that amphetamine tablets are drugs that are sold by the pill and not by weight. This finding is significant because the Stamp Act prescribes different tax rates for drugs sold by weight and drugs sold by "dosage unit."[3] Utah Code Ann. § 59–19–103.

In finding that the drugs in Zissi's possession are sold by the pill and not by weight, the Commission relied on the following evidence. The Commission heard testimony by Detective Kendra Hurlin of the Salt Lake County Sheriff's Department that amphetamines in pill form are sold by the pill. Loni Deland, a defense witness and a former narcotics agent for the State of Utah, testified that amphetamines generally are sold as a powder, by weight. However, Deland also testified that he had not seen amphetamines in pill form sold by weight. After reviewing this testimony, we cannot say that the Commission's finding that amphetamine tablets are sold by the pill was contrary to the substantial weight of the evidence, which we have de-fined as that quantum of relevant evidence that would tend to convince a reasonable person of a conclusion. *First Nat'l Bank of Boston,* 799 P.2d at 1165; *Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 68 (Utah Ct.App.1989). Consequently, we affirm the Commission's factual conclusion.

We next examine Zissi's argument that the Commission misconstrued the meaning of the term "dosage unit," as used in the Stamp Act. The Stamp Act itself does not define this term.[4] The Commission construed it to mean one tablet or pill, basing its determination on expert testimony by J. Craig Johnson, director of Pharmacy Services at LDS Hospital. Johnson testified that "dosage unit" has a distinct meaning in medical circles, a meaning that differs from the meaning of the term "dosage." He said that "dosage unit" means the amount of a medicine or prescription that is sold as a unit and relates to how the medicine is packaged. This differs from the dosage a patient takes, which may be one dosage unit or more than one dosage unit, depending on the strength of the patient's prescription.

■ Zissi argues that because the actual dosage taken by users of amphetamines is generally greater than one pill,

**2.** Our recent decisions recognize that we should grant intermediate deference to an agency's interpretation or application of specific laws when the legislature has explicitly or implicitly delegated discretion to the agency to interpret or apply that law. *See, e.g., Morton Int'l, Inc. v. Auditing Div. of Utah State Tax Comm'n,* 814 P.2d 581, 589 (Utah 1991); *Savage Indus., Inc.,* 811 P.2d at 668. In the instant case, there is no explicit delegation of discretion, and the issues are questions of constitutional law and statutory construction on which the Commission's experience and expertise will be of no real assistance. *See Sandy City v. Salt Lake County,* 827 P.2d 212, 218 (Utah 1992); *Silver v. Auditing Div. of State Tax Comm'n,* 820 P.2d 912, 914 (Utah 1991). Therefore, we do not apply the standard of intermediate deference to the legal issues in this case. *See Silver,* 820 P.2d at 914.

**3.** The Stamp Act states in relevant part:
 (1) A tax is imposed on marihuana and controlled substances as defined in this chapter at the following rates:

 . . . . .

 (b) on each gram of a controlled substance, or each portion of a gram, $200; and

 (c) on each 50 dosage units of a controlled substance that is not sold by weight, or portion thereof, $2000.
 (2) For the purpose of calculating the tax under this chapter, a quantity of marihuana or other controlled substance is measured by the weight of the substance, whether pure or impure or dilute, or by dosage units when the substance is not sold by weight, in the dealer's possession.
Utah Code Ann. § 59–19–103.

**4.** Although the statute contains no definition of the term "dosage unit," it does authorize the Commission to adopt the rules necessary to enforce the Stamp Act. *See* Utah Code Ann. § 59–19–107(1). However, the Commission has never exercised this rule-making power.

the Commission's determination that a dosage unit equals one pill is erroneous. Essentially, Zissi would have this court equate "dosage" with "dosage unit." This argument ignores the word "unit" in the term. A general rule of statutory construction is that a statute should be construed as a comprehensive whole. *See Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1045 (Utah 1991); *Peay v. Board of Ed. of Provo City School Dist.*, 14 Utah 2d 63, 66, 377 P.2d 490, 492 (Utah 1962). In construing legislative enactments, we assume that the legislature used each term in the statute advisedly and, thus, that we should read the statutory words literally and in accordance with their usually accepted meanings. *See Pate v. Marathon Steel Co.*, 777 P.2d 428, 430 (Utah 1989); *Hector, Inc. v. United Sav. & Loan Ass'n*, 741 P.2d 542, 546 (Utah 1987); *Grant v. Utah State Land Bd.*, 26 Utah 2d 100, 102, 485 P.2d 1035, 1036 (1971).

While Zissi correctly points out that the term "dosage" is generally understood to be the amount of drug a person would take, he does not address the meaning of the word "unit" in the term "dosage unit." "Unit," as defined by Webster's Dictionary, means

> the first natural number: a number that is the least whole number and is expressed by the numeral 1: a *single thing* (as a magnitude or number) that constitutes an undivided whole ...: a determinate quantity (as of length, time, heat, value or housing) adopted as a standard of measurement for other quantities of the same kind ...: *a single thing* or person or group *that is a constituent and isolable member of some more inclusive whole:* a member of an aggregate that is *the least part to have clearly definable separate existence* and that normally forms a basic element of organization within the aggregate....

*Webster's Third New International Dictionary* 2500 (1961) (emphasis added).

 When read in conjunction with "dosage," it is apparent that the word "unit" in "dosage unit" relates to a single item or measurement used to determine the patient's actual dosage. The Commission's construction of the term "dosage unit" takes this definition of unit into account in determining that a dosage unit is one pill. The language of the statute and the evidence that "dosage unit" has a distinct meaning in the medical community amply support the Commission's definition of "dosage unit" as a unit of the drug. In this case, that unit is one pill. We therefore affirm the Commission's interpretation of "dosage unit."

Having rejected Zissi's challenges to the Commission's fact-finding and statutory construction, we next turn to his attacks on the constitutionality of the Stamp Act. First, Zissi argues that the Stamp Act violates Fourteenth Amendment due process guarantees because it is unconstitutionally vague on its face. Specifically, he argues that the term "dosage unit" in the statute is vague and indefinite and subject to arbitrary enforcement by the Commission and the prosecuting authorities charged with enforcing the Stamp Act because the term does not provide fair notice of what is required or prohibited and does not protect against unfettered discretion in enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *State v. Fontana*, 680 P.2d 1042, 1049 (Utah 1984); *Greaves v. State*, 528 P.2d 805, 807 (Utah 1974); *State v. Packard*, 122 Utah 369, 250 P.2d 561, 564 (1952).

We will find a statute to be unconstitutionally vague on its face only when it is insufficiently explicit and clear to inform the ordinary reader of common intelligence what conduct is proscribed. *See Greenwood v. City of North Salt Lake*, 817 P.2d 816, 819 (Utah 1991); *Chris & Dick's Lumber v. Tax Comm'n*, 791 P.2d 511, 516 (Utah 1990); *Packard*, 250 P.2d at 563. We apply this test in light of the fact that exactitude of language is seldom possible. Consequently, we will not invalidate a statute for vagueness if any sensible, practical effect can be given to the contested statutory terms. *Packard*, 250 P.2d at 563; *see State v. Musser*, 118 Utah 537, 223 P.2d 193, 194 (1950).

With this standard in mind, we examine Zissi's interpretation of the statute. He argues that the term "dosage unit" means the number of pills or units of a drug that a user purchases and uses at one time and that therefore the statute is vague and not readily susceptible of equal enforcement and operation. He claims that dealers who desire to comply with the statute's mandate that they pay tax on and purchase stamps for all drugs in their possession are required to make a prior assessment of what the Commission later will determine makes up a dosage unit.

Zissi's argument cannot survive our holding that "dosage unit" means one tablet or pill, not the dose actually taken by each different drug user. Thus interpreted, the term "dosage unit" within the statute meets the requirements for specificity and notice of the required conduct. Dealers are made aware that they will be required to buy stamps based upon each pill in their possession. We reject Zissi's argument that the Stamp Act is unconstitutionally vague on its face.

We next address Zissi's contention that the Stamp Act violates both federal and state guarantees of equal protection. The Utah Constitution states, "All laws of a general nature shall have uniform operation." Utah Const. art. I, § 24. We have previously determined that article I, section 24 imposes an analysis of the reasonableness of economic legislation that is at least as rigorous as the analysis required by the federal equal protection clause and may require even stricter scrutiny than does the federal Constitution. *See Blue Cross & Blue Shield of Utah v. State*, 779 P.2d 634, 637 (Utah 1989); *Mountain Fuel Supply Co. v. Salt Lake City Corp.*, 752 P.2d 884, 889 (Utah 1988); *see also Malan v. Lewis*, 693 P.2d 661, 670 (Utah 1984). Therefore, our analysis begins with Utah's constitutional provision requiring uniform operation of the laws. If the tax statute at issue withstands scrutiny under the Utah Constitution, we need not examine the federal equal protection question. *See Blue Cross*, 779 P.2d at 637.

As a threshold matter, we note that our analysis is guided by the well-settled proposition that the party challenging a statute bears the burden of demonstrating its invalidity. *See, e.g., Blue Cross*, 779 P.2d at 637; *City of West Jordan v. Utah State Retirement Bd.*, 767 P.2d 530, 537 (Utah 1988); *Baker v. Matheson*, 607 P.2d 233, 236 (Utah 1979). In tax, as in other areas of purely economic regulation, we grant broad deference to the legislature when scrutinizing the reasonableness of legislative classifications and their relationship to legitimate legislative purposes. *See Blue Cross*, 779 P.2d at 637; *City of West Jordan*, 767 P.2d at 537. "That broad deference leads us to sustain a classification if 'facts can reasonably be conceived which would justify the distinctions or differences in state policy [expressed by the challenged legislation] as between different persons.'" *Blue Cross*, 779 P.2d at 637 (quoting *Baker*, 607 P.2d at 244).

Bearing in mind this broad deference, we analyze the Stamp Act to see whether it violates article I, section 24. "In scrutinizing a legislative measure under article I, § 24, we must determine whether the classification is reasonable, whether the objectives of the legislative action are legitimate, and whether there is a reasonable relationship between the classification and the legislative purposes." *Id.* Before turning to these issues, we must identify what classifications the legislature has made in imposing the Drug Stamp Tax. First, the Stamp Act imposes a tax on those who deal in illegal drugs. The definition of "dealers" in the Stamp Act is based upon the quantity of drugs possessed. Utah Code Ann. § 59–19–102(2). Second, the Stamp Act breaks "dealers" into subgroups that are taxed at different rates, depending on the form of the drugs possessed by the dealer and the manner in which these drugs are sold. *See id.* § 59–19–103. Hence, the statute distinguishes between dealers possessing drugs sold by weight and those possessing drugs not sold by weight.

■ Now that we have identified the statute's classifications, we analyze their legitimacy. The first question is whether there is anything inherently unreasonable in the legislature's classifications of drug dealers. See *Blue Cross*, 779 P.2d at 640. The statute defines a dealer as anyone who "manufactures, produces, ships, transports, or imports into Utah or in any manner acquires or possesses more than 42½ grams of marihuana, or seven or more grams of any controlled substance, or ten or more dosage units of any controlled substance which is not sold by weight." Utah Code Ann. § 59–19–102(2). On their face, these distinctions are not patently unreasonable. Indeed, it makes perfect sense that the legislature would impose the tax on only those persons who possess a significant quantity of a controlled substance. Unlike casual users, who possess only small quantities of drugs, such persons are more likely to be major participants in the drug trafficking that creates such a drain on government resources.

■ Moreover, the classification of dealers depending on the types of drugs they possess is also reasonable. Controlled substances are sold in different forms. The classifications are a necessary concession to this fact and do not single out any member of a particular class for disparate treatment. All drugs sold by weight are taxed at the same rate. Likewise, all drugs sold in units are taxed at the same rate. See *id.* § 59–19–103(1)(c).

■ Zissi maintains that because the tablet amphetamines might well have been ground into powder form and thus taxed at the lower rate for drugs sold by weight, he is being discriminated against unreasonably. However, he fails to address the fact that an amphetamine sold in powder form is a distinctly different substance than an amphetamine sold in tablet form. The evidence before the Commission distinguished between amphetamine tablets, which characteristically are of an off-white, brownish color, and crystal amphetamine, commonly called "crystal" or "crank," which is a very fine white powder. Further, the evidence indicated that amphetamine tablets are sold not by weight but by number. On the other hand, "crystal," or "crank," is in fact sold by weight but is much more expensive. Because of these distinctions, we hold that the classification is reasonable.

■ The second question under our analytical model is the legitimacy of the objectives pursued by the legislation. See *Blue Cross*, 779 P.2d at 640. The legislative history of the Stamp Act reveals two objectives, namely, to raise revenue and to discourage illegal drug trafficking.[5] Both are legitimate legislative purposes.

■ The third and final question is whether the legislature chose a permissible means to achieve its legitimate ends. *Id.*

---

5. Senator Ivan Matheson, who presented the Stamp Act (S.B. 209) to the Senate, explained the bill as follows:

Mr. President, this is an interesting concept. It's a tax on the sale of illegal drugs. Now, Minnesota put this particular mechanism on and a year ago picked up $6 million in revenue. What it does is [require] the Public Safety Commission [to] prescribe[ ] stamps and seals that must be on those drugs if they're sold. If they come in to get the stamps and seals, they're illegal to start with and if they don't put them on we can prosecute them for the tax that they didn't pay. And we also prosecute them by increasing amounts. We can get them for tax evasion on account that they've made money on that they've never reported. There's a number of processes ... set forth in this bill that make it so if you pick anybody up with this drug, you've got them one way or another, and it's going to lead to some pretty stiff enforcement on it.

Like I mentioned, Minnesota picked up $6 million. I don't have any idea, and the fiscal note says they don't on this, but it will be a revenue producer. It will be a mechanism to tie down these drug pushers and what-not and nail them to the wall when they sometimes get away from us. The Public Safety Commissioner thinks it's an idea that'll work. I don't know how many of you remember back to the time when Al Capone was finally convicted. He was convicted on this very process. This is a mechanism I think we can reach out and get some of those people. If there's any questions, I'd be happy to answer. Utah State Senate, Record of Third Reading of S.B. 209, Feb. 23, 1988 (recording on file with the Utah Senate, 47th Leg., Senate, day 44, disk 91, side 1).

at 641. If the relationship of the classification to the statutory objectives is unreasonable, the discrimination is unreasonable. *See Malan,* 693 P.2d at 671; *see also Hulbert v. State,* 607 P.2d 1217, 1224 (Utah 1980). Here, a heavy tax on controlled substances undeniably will have the effects of raising revenue and inhibiting drug trafficking. We cannot say that imposing a drug tax is an unreasonable means of achieving these ends.

■ For these reasons, we reject Zissi's contention that the Stamp Act violates article I, section 24 of the Utah Constitution. Because of this holding, we also reject Zissi's contention that the Stamp Act violates the Fourteenth Amendment. *See Blue Cross,* 779 P.2d at 645.

Third, Zissi contends that compliance with the Stamp Act would require him to provide evidence against himself in violation of the privilege against self-incrimination granted in the Fifth Amendment to the federal Constitution and article I, section 12 of the Utah Constitution. Zissi argues that the Stamp Act requires self-incrimination in two ways: first, by requiring a dealer who complies with its terms to provide incriminating information that may be turned over to the state or local prosecutor; and second, by providing vital evidence in a prosecutor's case against a dealer who complies with the Act and affixes the stamps to illicit drugs because such acts show knowledge that the items are controlled substances.

■ As a preliminary matter, we note that Zissi alleges violations of both the state and federal constitutions. However, because Zissi failed to argue the issue under the state constitution, mentioning it only off-handedly in his brief, we will not address the state constitutional question. *See State v. Webb,* 779 P.2d 1108, 1111 n. 4 (Utah 1989); *State v. Lafferty,* 749 P.2d 1239, 1247 n. 5 (Utah 1988).

■ Turning to the merits of Zissi's federal constitutional argument, we agree that under *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), and their progeny, the Stamp Act's provisions violate the federal Constitution because the purchaser would reasonably suppose that compliance would make information available to prosecuting authorities and that the information would provide a "link in a chain" of evidence that would tend to establish the individual's guilt of drug-related offenses. *See Marchetti,* 390 U.S. at 48, 88 S.Ct. at 703.

■ However, although the Stamp Act is facially unconstitutional, we are mindful of our power to save a statute from unconstitutionality by imposing on it a limiting construction. This power permits us to uphold an otherwise questionable statute by tailoring it to conform to the Constitution, which is what we must presume the legislature intended. *See In re Criminal Investigation,* 754 P.2d 633, 640–41 (Utah 1988); *see also Greaves,* 528 P.2d at 807. The Utah Court of Appeals suggested such a course for the Stamp Act in *State v. Davis,* 787 P.2d 517 (Utah Ct. App.1990). We follow the course suggested in *Davis,* and we hold that the statute must be read to preclude prosecutors from using *any* information gained as a result of a stamp purchaser's compliance with the tax statute to establish a link in the chain of evidence in a subsequent drug prosecution. *See id.* at 522–23. With such a reading, the scope of the resulting immunity is broad enough to satisfy the requirements of the Fifth Amendment.

■ Zissi's final challenge to the constitutionality of the Stamp Act is his contention that it violates the Eighth Amendment's prohibition of cruel and unusual punishment because it inflicts an excessive fine or forfeiture. The State responds by arguing that the United States Supreme Court has held that the provisions of the Eighth Amendment apply only to criminal fines and forfeitures, not to civil punishments or penalties. *See Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408–09, 51 L.Ed.2d 711 (1977). The State's argument founders on the fact that we have already determined Commission hearings under the Stamp Act to be quasi-

criminal in nature. *See Sims v. Collection Div. of the Utah State Tax Comm'n,* 841 P.2d 6, 14 (Utah 1992). Consequently, we must examine the merits of Zissi's Eighth Amendment claim.

As a threshold matter, we note that because Zissi has cited no authority and made no separate cruel and unusual argument under the state constitution, we will address this issue only in the context of the federal Constitution. This analysis begins with the Supreme Court's opinion in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In *Solem,* the Supreme Court emphasized that the Eighth Amendment requires that the punishment imposed on a criminal be proportionate to the crime he or she committed. *Id.* at 286–88, 103 S.Ct. at 3007–09. The Court held that to determine the proportionality of the punishment, a court should rely on "objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292, 103 S.Ct. at 3011. *See generally State v. Bishop,* 717 P.2d 261, 269–72 (Utah 1986). Applying these criteria to the case before us, we find that the Stamp Act does not violate the Eighth Amendment.

We begin with the gravity of the offense and the harshness of the penalty. Zissi does not seriously contend that his evasion of the drug tax is a harmless or frivolous offense. Nor could he. Illegal drug trafficking and abuse are significant problems in our society. They create an enormous economic drain on our public funds. We devote substantial resources to educating our citizens against drug abuse and apprehending, convicting, and treating or incarcerating those who violate our drug laws.

The legislature has attempted to recoup some nominal portion of the costs incurred in fighting drug abuse by imposing a tax on the very people—the drug dealers—who benefit so greatly from this usage. Sixty percent of all monies collected under the Stamp Act are distributed "to the law enforcement agency conducting the controlled substance investigation, to be used and applied by the agency in the continued enforcement of controlled substance laws." Utah Code Ann. § 59–19–105(6)(a)(ii). This tax not only provides the state with crucial resources to combat the ills of drug trafficking, but it may have the additional salutary effect of making drug dealing less lucrative, thereby lessening the incentive to purchase and peddle illicit drugs.

By evading the drug tax, Zissi thwarted these legitimate governmental efforts to suppress drug use. This grave offense is in no way disproportionate to the fines the Commission imposed on Zissi under the Stamp Act. A monetary fine is the lightest criminal sanction the state can impose. *See Bishop,* 717 P.2d at 269. Though Zissi argues that the $44,000 penalty greatly exceeded the actual street value of the drug, he makes no attempt to convince us that the penalty is not commensurate with the social and economic harm inflicted on the State of Utah. We hold that under *Solem,* the severity of the sanction imposed on Zissi is not unconstitutionally disproportionate to the gravity of his offense.

Turning to the second element of the *Solem* analysis, we examine the comparability of other penalties imposed for similar offenses. *See Bishop,* 717 P.2d at 270. Utah prescribes heavy penalties for tax evasion. Although the Stamp Act's penalty of 100 percent of the unpaid tax is among the most severe in Utah law, it is by no means unique. For instance, Utah imposes a penalty of 100 percent of underpaid tax when that underpayment is due to fraud with intent to evade the tax. *See* Utah Code Ann. § 59–1–401(3)(d). Consequently, we are unable to say that the Stamp Act's penalties run afoul of the second element of the *Solem* test.

Finally, *Solem* requires us to compare the penalties imposed under the Stamp Act with penalties imposed by similar statutes in other jurisdictions. *See Solem,* 463 U.S. at 292, 103 S.Ct. at 3010. Although we have not undertaken a comprehensive investigation into the drug tax statutes in other states, our research shows that the penalties possible under the Utah Act do

not markedly exceed the penalties possible nationwide. In fact, Alabama, Idaho, Kansas, and Minnesota all impose the same taxes on illegal drugs and penalties for evasion of those taxes as does Utah. *See* Ala.Code §§ 40–17A–8, –9(a) (Supp.1991); Idaho Code §§ 63–4203, –4207(1) (Supp. 1992); Kan.Stat.Ann. §§ 79–5202(a), –5208 (1989 & Supp.1991); Minn.Stat.Ann. §§ 297D.08, 297D.09 subd. 1 (1990 & Supp. 1991). Thus, this situation is unlike that in *Solem,* where it appeared that the defendant had been treated more severely than he would have been in any other state. 463 U.S. at 299–300, 103 S.Ct. at 3014–3015. Because Zissi could have received similar penalties in these jurisdictions, we cannot say that the Utah penalty is disproportionate. We reject Zissi's contention that the Stamp Act violates the Eighth Amendment.

Notwithstanding our rejection of all four of Zissi's challenges to the constitutionality of the Stamp Act, our holding that the Stamp Act survives Zissi's constitutional challenges does not dispose of this case. Zissi also attacks the constitutionality of the search of his truck and the seizure of his amphetamine tablets and argues that the exclusionary rule should have prevented the admission of the drugs in evidence at the Commission's hearing. We agree.

 We begin with the constitutionality of the roadblock and subsequent search. Before the Commission, both parties briefed the question of the constitutionality of the roadblock stop. The Commission took the position that it had no authority to rule on that question but did so nonetheless, declaring that the roadblock was not unconstitutional and admitting the seized drugs in evidence against Zissi. Before this court, Zissi raised and briefed the issue of the roadblock's constitutionality. The State, in contrast, chose not to address the constitutionality question in its brief, relying instead on the argument that the exclusionary rule should not apply to a tax proceeding. The State's reliance on the exclusionary rule argument implicitly accepted the preliminary assumption that the roadblock was illegal. At oral argument, neither party addressed the legality of the roadblock; both parties assumed that the roadblock was illegal and argued instead only about the application of the exclusionary rule. There is no question that the State had the burden to justify the stop once Zissi challenged its constitutionality. Because it failed to do so, we hold that the State has waived its right to argue the legality of the roadblock stop and accept for the purposes of this appeal that the roadblock stop constituted an unconstitutional seizure that invalidated the subsequent search.

 This brings us to Zissi's final contention. He argues that because the roadblock stop was unconstitutional, the evidence resulting from the stop should, under the state exclusionary rule, be excluded from the tax proceeding. Our recent opinion in *Sims v. Collection Division of the Utah State Tax Commission,* 841 P.2d 6 (Utah 1992), governs this issue. In *Sims,* which addressed a similar factual situation, a plurality of this court held that the Utah Constitution's exclusionary rule prevented the Commission from admitting in evidence the drugs taken from Sims' car. *Id.* at 14 (Durham, J., joined by Zimmerman, J.). In a separate opinion, Justice Stewart reached the same conclusion under the federal exclusionary rule. *Id.* at 14 (Stewart, J., concurring in the result). Thus, *Sims* compels us to conclude that the Commission likewise erred in admitting in evidence the amphetamines seized from Zissi's truck. This error was clearly harmful, as the Commission premised the tax and penalties on the drugs themselves. Consequently, we reverse the Commission's decision.

STEWART and DURHAM, JJ., concur.

HOWE, Associate Chief Justice (concurring and dissenting):

I concur in that part of the majority opinion which rejects all four of Zissi's challenges to the constitutionality of the Stamp Act.

I dissent from that part which holds that the roadblock was illegal. I would not reach that issue because it is unnecessary

to do so. I would follow the reasoning of my dissenting opinion in *Sims v. Collection Division of Utah State Tax Commission,* 841 P.2d 6 (Utah 1992), and hold that, assuming the roadblock was illegal and the search of the truck and seizure of the tablets was unconstitutional, the exclusionary rule should not be applied to bar admission of the drugs in evidence before the Commission. My reasoning was that proceedings before the Commission to enforce the Stamp Act are civil in nature and that the exclusionary rule should only be applied in criminal proceedings. Also, I pointed out that imposition of the exclusionary rule would serve no useful purpose because the Commission played no part in either setting up the roadblock or the search and seizure that followed. The police officers have already been punished by the suppression of the seized evidence in Sims' criminal prosecution. The same reasons apply in the instant case.

The majority opinion in *Sims,* in holding that proceedings before the Commission are quasi-criminal in nature, relied heavily on the fact that a 100 percent penalty is imposed by the Stamp Act. In my dissenting opinion, I observed that the penalty was no heavier than is imposed in both federal and civil tax proceedings on erring taxpayers. It is interesting that now, in the instant case, the majority agrees that the penalty is no heavier than is found in our income tax code, which admittedly is a civil, not a quasi-criminal, penalty. States the majority:

> Utah prescribes heavy penalties for [income] tax evasion. Although the Stamp Act's penalty of 100 percent is among the most severe in Utah law, it is by no means unique. For instance, Utah imposes a penalty of 100 percent of underpaid tax when that underpayment is due to fraud with intent to evade the tax. *See* Utah Code Ann. § 59–1–401(3)(d).

The above statement from the majority opinion in this case effectively undercuts one of the chief bases for the majority opinion in *Sims.*

I would affirm the Commission.

HALL, C.J., concurs in the concurring and dissenting opinion of HOWE, Associate C.J.