**FIRST NATIONAL BANK OF BOSTON, Petitioner,**

v.

**COUNTY BOARD OF EQUALIZATION OF SALT LAKE COUNTY, State of Utah; Utah State Tax Commission, Respondents.**

No. 890278.

Supreme Court of Utah.

Oct. 16, 1990.

. . . .

J. Frederic Voros, Jr., Salt Lake City, for petitioner.

Bill Thomas Peters, Salt Lake City, for County Bd. of Equalization.

R. Paul Van Dam, Brian L. Tarbet, Salt Lake City, for Tax Com'n.

HALL, Chief Justice:

This case is a review of an order of the Utah State Tax Commission ("Tax Commission") setting the assessment on property owned by First National Bank of Boston ("First National") and from a denial of First National's request for reconsideration. First National challenges the accuracy of the Tax Commission's finding that the expense ratio on the property is 25 percent.

The property at issue in this case is an office building located in Salt Lake City, Utah, and subject to assessment by Salt Lake County pursuant to Utah Code Ann. § 59-2-301 (1987). Salt Lake County assessed the property at $5,176,440 for the year 1987. First National appealed the assessment to the Salt Lake County Board of Equalization ("Board of Equalization"), which adjusted the value of the property to $4,580,850 based on evidence presented at the hearing.

First National appealed the decision of the Board of Equalization to the Tax Commission. At a formal hearing before the Tax Commission, First National asserted that the fair market value of the property was approximately $3.7 million. Salt Lake County contended that the property's fair market value was $4.7 million. On April 28, 1989, the Tax Commission entered its findings of fact and conclusions of law, determining that the fair market value of the property was $4,200,000.

The Tax Commission calculated the fair market assessment value of the property by using the income approach to value method. Elements of the income approach to value included the following formula and data presented at the formal hearing:

1. $14 per square foot less an adjustment for free rent, or $11.67 per square foot;
2. capitalization rate of 10.9 percent;
3. an expense ratio of 25 percent; [1]
4. a stabilized vacancy rate of 10 percent; and
5. the area size of the building, which is 58,252 square feet.

Although the expense ratio is disputed, the formula for the calculation of the assessment is not in dispute: 58,252 total sq. ft. × 11.67 effective rent − 10% vacancy rate − $170,095 expenses (25% expense ratio) (disputed figure) / 10.9% capitalization rate = $4,200,000 taxable amount. The Tax Commission arrived at a final taxable

---

1. The expense ratio is calculated by dividing the square foot expense figure, in this case, $3.47 per square foot, by the income from rental rates, $14 per square foot face rate ($11.67 per square foot when adjusted for free rent given as inducements or incentives to tenants).

amount of $4,200,000 by using the 25 percent expense ratio.[2] First National calculated the taxable amount to be $3,690,429 by using a 31 percent expense ratio.[3]

The only issue for review is the accuracy of the Tax Commissions findings of fact, specifically, whether the Tax Commission erred in calculating the expense ratio portion of the formula at 25 percent. The other elements of the formula are not in dispute.

The Administrative Procedures Act[4] governs our review of the Tax Commission's assessment. Section 63–46b–16(4) states:

(4) The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:

...;

(g) the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court

. . . .

Section 63–46b–16(4)(g) requires an appellate court to review the "whole record" to determine whether the agency's action is "supported by substantial evidence." "Substantial evidence" is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion.[5] An appellate court applying the "substantial evidence test" must consider both the evidence that supports the Tax Commission's factual findings and the evidence that detracts from the findings.[6] Nevertheless, the party challenging the findings—in this case, the taxpayer—must marshal all of the evidence supporting the findings and show that despite the supporting facts, the Tax Commission's findings are not supported by substantial evidence.[7]

Nothing in the record indicates how the Tax Commission arrived at the figures for expenses and the 25 percent expense ratio. First National has presented expense figures that were entered into evidence and has explained how those figures fit into the formula to arrive at the $3,690,429 fair market value.

Despite the fact that both parties presented evidence of expense figures significantly higher than the Tax Commission's findings, the Board of Equalization and the Tax Commission argue that the Tax Commission is not bound by the evidence presented by either party but may make findings of its own. They base their argument upon the broad grant of authority bestowed upon the Tax Commission in the Utah Constitution[8] and Utah Code An-

---

2. The method the Tax Commission used to arrive at the $4,200,000 figure is unclear; however, if some of the figures contained in the findings of fact are used, the calculation would be as follows: 58,252 sq. ft. × $11.67 (679,800.-84) − 10% vacancy rate (67,980.08) − $170,095 expenses / 10.9% capitalization rate = $4,052,-529.9. Nevertheless, the Tax Commission valued the property at $4,200,000.

3. The figures used by First National are as follows: 58,252 × $11.67 (679,800.84) − 10% vacancy rate (67,980.08) − $209,564 expenses (31% expense ratio) / 10.9% capitalization rate = $3,690,429 taxable amount.

4. Utah Code Ann. §§ 63–46b–1 to –22 (1989).

5. See Consolo v. FMC, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966); Idaho State Ins. Fund v. Hunnicutt, 110 Idaho 257, 715 P.2d 927, 930–31 (1985); Grace Drilling v. Board of Review, 776 P.2d 63, 68 (Utah Ct.App.1989).

6. See Grace Drilling, 776 P.2d at 68. We note that prior to the repeal of Utah Code Ann.

§ 54–7–16 (1953) and the enactment of section 63–46b–16 (1989), an appellate court's review of an agency's findings of fact was limited to reversing only when the findings were arbitrary and capricious and "without foundation in fact." The agency's findings would be upheld if there was evidence of any substance whatever which could reasonably be regarded as supporting the finding. See, e.g., Utah Dep't of Admin. Serv. v. Public Serv. Comm'n, 658 P.2d 601, 608–09 (Utah 1983).

7. See Cornish Town v. Koller, 758 P.2d 919, 922 (Utah 1988); Grace Drilling, 776 P.2d at 68.

8. Article XIII, section 11 states in pertinent part:

The State Tax Commission shall administer and supervise the tax laws of the State. It shall assess mines and public utilities and adjust and equalize the valuation and assessment of property among the several counties. It shall have such other powers of original assessment as the Legislature may provide. Under such regulations in such cases and

notated.[9]

Nowhere in the Utah Constitution or Utah Code Annotated does the legislature give the Tax Commission the unbridled discretion to make findings of fact beyond the scope of what is presented in the hearings or inferences to be drawn therefrom. Although it is a "universally recognized rule" that this court must "take some cognizance of the expertise of the agency in its particular field and accordingly to give some deference to its determination,"[10] the agency's decision must rest upon some sound evidentiary basis, not a creation of fiat.[11]

It is unclear from the record how the Tax Commission arrived at the figures it used in calculating the fair market value of petitioner's property. First National has upheld its burden to marshal all of the evidence in support of the Tax Commission's findings and has shown that on the record before us those findings are inconsistent with the evidence presented.

We remand for the purpose of requiring the Tax Commission to more fully articulate the basis for its findings and determination of fair market value in light of the evidence presented in the hearing.

HOWE, Associate C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

within such limitations as the Legislature may prescribe, it shall review proposed bond issues, revise the tax levies of local governmental units, and equalize the assessment and valuation of property within the counties. The duties imposed upon the State Board of Equalization by the Constitution and Laws of this State shall be performed by the State Tax Commission.

In each county of this State there shall be a County Board of Equalization consisting of the Board of County Commissioners of said county. The County Boards of Equalization shall adjust and equalize the valuation and assessment of the real and personal property within their respective counties, subject to such regulation and control by the State Tax Commission as may be prescribed by law. The State Tax Commission and the County Boards of Equalization shall each have such other powers as may be prescribed by the Legislature.

9. Section 59–1–210 states in pertinent part:
The powers and duties of the commission are as follows:
...;
(7) to exercise supervision over assessors and county boards of equalization, and over other county officers in the performance of their duties relating to the assessment of property and collection of taxes, so that all assessments of property are just and equal, according to fair market value, and that the tax burden is distributed without favor or discrimination;
...;
(23) to correct any error in any assessment made by it at any time before the tax is due and report the correction to the county auditor, who shall enter the corrected assessment upon the assessment roll;
...;
(25) to perform any further duties imposed by law, and exercise all powers necessary in the performance of its duties;
...;
(27) to comply with the procedures and requirements of Chapter 46b, Title 63, in its adjudicative proceedings.

10. *Utah Power & Light Co. v. State Tax Comm'n,* 590 P.2d 332, 335 (Utah 1979).

11. *Hurley v. Board of Review of Indus. Comm'n,* 767 P.2d 524, 526–27 (Utah 1988); *Utah Power & Light,* 590 P.2d at 335.