**QUESTAR PIPELINE COMPANY,**
Petitioner,

v.

**UTAH STATE TAX COMMISSION,**
Respondent.

No. 900592.

Supreme Court of Utah.

April 13, 1993.

Gary G. Sackett, Salt Lake City, for petitioner.

R. Paul Van Dam, Atty. Gen., L.A. Dever, and Kelly W. Wright, Asst. Attys. Gen., Salt Lake City, for respondent.

HOWE, Associate Chief Justice:

Questar Pipeline Company seeks review of a decision of the Utah State Tax Commission assessing the fair market value of Questar's operating property for 1988 at $296 million.

Questar Pipeline is a Utah corporation engaged in the interstate transportation, sale, and storage of natural gas in Utah, Wyoming, and Colorado. When the 1988 assessment was made, it was a wholly owned subsidiary of Entrada Industries, a wholly owned subsidiary of Questar Corporation whose common stock was publicly traded. Questar Pipeline's plant and equipment represented approximately 29% of Questar Corporation's total assets. Its revenues accounted for approximately 33% of the parent corporation's gross revenues, and its payroll was approximately 20% of Questar Corporation's total payroll.

In April 1988, the Property Tax Division of the Tax Commission assessed the taxable properties of Questar Pipeline at $300 million. Questar paid taxes based on that assessment under protest and petitioned for a hearing and redetermination of its assessment. Prior to the hearing but after the parties had engaged in discovery, the Division and Questar narrowed the issues by stipulating to the validity of certain formal calculations. They stipulated that if the cost method of appraising was fol-

lowed, the fair market value would be $210 million; if the income method was used, $303 million; and if the market (stock and debt) method was used, $312 million. The parties further stipulated that they would not challenge the underlying calculations of each method. Instead, the issue at the hearing would be the reconciliation of these values or the weight to be assigned to each method to arrive at a fair market value for Questar's property. After hearing expert testimony from both parties, the Tax Commission fixed the fair market value at $296 million.

Both parties agree that our standard of review is governed by Utah Code Ann. § 63–46b–16(4)(g), providing that relief shall be granted on review only if a person seeking judicial review has been substantially injured by agency action that is not supported by "substantial evidence." The parties further agree that it was the Commission's task to determine the "fair market value" of the subject property as that term was defined in Utah Code Ann. § 59–2–102(2)[1] at the time of the assessment in April 1988:

> "Fair market value" means the amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts.

It is conceded that there are few, if any, comparable sales of large multistate regulated entities such as Questar, and thus surrogate measures must be used to determine the fair market value.

In its findings of fact, the Commission summarized the position of Questar as follows: A 78.8% weight should be placed upon the cost method evaluation, with 10.6% being placed on each of the other two approaches. When these weights are applied to the stipulated values, the reconciliation renders a result of $231 million as Questar's value for its property. Questar supported the cost approach primarily because the Federal Energy Regulation Commission (FERC) set the rate base of Questar on the depreciated cost of its facilities.

The position of the Division was summarized in the Commission's findings of fact as follows: The market and income methods more accurately reflect the conditions of the market than does the cost method favored by Questar, which depends on a mechanical, mathematical weighing that does not reflect the fluctuations and conditions of the actual market. Based on that fact, the Division came up with a correlated value for the properties of $300 million.

The Commission found, based on the evidence before it, that the cost approach was the least reliable and the income and market approaches the most reliable:

> The Tax Commission finds that in a case such as this, the market and income approaches to value are more reflective of actual market conditions than is the cost approach to value. This is because the cost approach is generally considered in the appraisal profession as a reliable indicator of value only when sufficient data and conditions are not present for the other two approaches. In this case, there is a more than sufficient amount of data to support a valuation based upon the market and income approaches. While the cost approach may appear to some, in a strict mathematical sense, to be more technically correct, it does not necessarily follow that that approach is also the most reflective of actual market conditions. Market values do not always conform to precise mathematical formulations.

The Commission fixed the reconciled value of Questar's properties at $296 million.

Questar attacks the Commission's findings in the form of a number of arguments that we will consider seriatim. First, the findings are assailed on the ground that the record as a whole does not support reliance on the market and income approaches and that rejection of the cost method is not reasonable because any buyer would know that he or she would earn a return only on the rate base fixed by FERC, which is, with minor adjustment,

---

**1.** Current version at Utah Code Ann. § 59–2– 102(7).

the same as the result produced by the cost method in this proceeding. While Questar concedes that "cost" is neither dispositive of fair market value nor a cap, it argues that cost must be dealt with in arriving at a value based on the record as a whole.

This attack on the findings requires us to examine the evidence presented to the Commission. Three experts testified for the Division and expressed strong preference for the income and market (stock and debt) approach. Dr. Steve Hanke, a professor of applied economics at Johns Hopkins University, testified that the stock and debt approach was superior,

> giving the objective of attempting to determine the fair market value, because it is a market based indicator whereas the other two are not.... [T]he primary aspect that makes it superior is that it provides an anchor when valuing property ... that's determined by a consensus of people who are actually putting their own wealth at risk in the market place, buyers and sellers who are actively engaged in the market.

Dr. Hanke emphatically rejected the cost approach, stating that it was "totally unacceptable in principle" and "has nothing to do with what people would pay for an asset and should never be used." He opined that "there is no causal link between cost and market value."

Michael Goodwin, an independent fee appraiser, agreed with Dr. Hanke that the stock and debt and income approaches were superior to the cost approach. His opinion was that the "cost indicator is not a very refined indicator of value and it does not have a great deal of reliability in indicating market value. The other two indicators I think would be preferable and would certainly by far deserve greater emphasis in a correlation process." He pointed out that the stock and debt approach "does come directly from market prices; and ... does not cause the analyst to interject his opinions per se into that process." He, too, rejected the cost approach because few investors "place a great deal of credence in the historical cost figures, when their primary emphasis ... is the expected cash flow stream which they might achieve by purchasing the assets in the first place."

A third expert testifying for the Division, Eckhardt Prawitt, favored the income approach. His opinion was based on the principle that the "value of the property is its sum of the future income stream discounted to present value." His second choice was the stock and debt method because "this is the only indicator of the three that derives its value from direct market evidence; namely, the actual trading of the company's securities." He rejected the cost approach because Questar was not a new pipeline. He testified, "I don't know its exact age, but I believe its composite age is around fifteen years. So I wouldn't put very much faith in the cost indicator regardless of the fact that it is regulated."

On the other hand, Professor Hal B. Heaton, then a visiting professor at Harvard Business School, testified for Questar. He conducted an analytical investigation of the information available in this case. In his attempt to find the most reliable estimate of fair market value by evaluating the relative reliability of the three individual methods, he did not reject the income or the market method. However, he did relegate them to a lesser role and relied heavily on the cost method that recognized the rate regulation process conducted by FERC. He thought that this method was less subjective and standardless.

The Commission's findings are well supported by the three expert witnesses who testified for the Division. Despite Questar's disagreement with their conclusions, it does not contend that they were not qualified to testify and give an opinion in this proceeding. They articulated why, in their opinions, the cost approach, which is favored by Questar, does not produce a reliable estimate of fair market value. Dr. Hanke made it very clear that the cost approach was "totally unacceptable in principle" and that "there is no causal link between cost and market value." Goodwin found the same detraction with the cost method. Prawitt rejected the cost approach for a different reason: because Questar was not a new pipeline and he did

not think that the depreciated value of its assets was a true indication of their value.

Moreover, the three appraisers were well aware of the consequences of rate regulation by FERC. Although they took this fact into consideration, it did not alter their final opinions that the income and market approaches produced a truer valuation. Prawitt stated, "I wouldn't put very much faith in the cost indicator regardless of the fact that [Questar] is regulated."

On cross-examination, Dr. Hanke refuted any suggested relationship between fair market value and rate base:

> Q. [by Questar's counsel] So isn't it fair to say that the revenues of the pipeline are constrained, at least to the extent that the rate base is an element of that equation by what the regulator determines the rate base to be? Isn't that right?
>
> A. [by Dr. Hanke] In some degree, the revenues are constrained by the determination of the rate base. I agree.
>
> Q. So it's not really accurate to say is it that the cost method to the extent that it's very close to the determination of the rate base is just someone's subjective judgment of the value of the company because here we have an example where the value directly derives a revenue strength; isn't that correct?
>
> A. No, that is incorrect. That's where you've made the mistake. If that was the case, what you're jumping to, you're mixing things up here, because you have this rate regulation going on the one hand, but we're trying to get fair market value on the other hand and those are two separate things although they might give the appearance of being true. If they were equal to each other the stock and debt approach would give you whatever the rate base was. The two numbers would be the same.

Goodwin, likewise, was cognizant of FERC but nevertheless supported the income, not the cost, approach to valuation.

▇▇ Questar insists that under our decision in *First National Bank of Boston v. County Board of Equalization*, 799 P.2d 1163 (Utah 1990), the substantial evidence test is not automatically satisfied by the production of a raw quantity of evidence. Questar argues that this court should also consider the quality of the evidence in determining whether the test has been met. Again, Questar does not contend that any of the experts who testified for the Division, and on whose testimony the Commission's findings are predicated, were not qualified to give an opinion. That being so, this court, when reviewing an agency's decision, does not conduct a de novo credibility determination or reweigh the evidence. We have pointed out earlier why the Division's witnesses rejected the cost approach to valuation. Although Questar insists that their rejection was unreasonable, we cannot say that the Commission was unreasonable in following their lead. While it is true that we have said that the record as a whole must be examined in determining whether findings are supported by the evidence, *see id.*, that does not mean that the testimony of all witnesses must be given equal weight. It was clearly the prerogative of the Commission to place greater weight on the testimony of the three experts testifying for the Division than upon the testimony of Professor Heaton, who testified in support of Questar's position.

Turning now to Questar's second attack on the findings, Questar contends that in a prior case before the Commission, *Northwest Pipeline Corp. v. Property Tax Division*, decided on December 21, 1987, the Commission concluded under similar facts that the stock and debt method of valuation was unreliable. Questar points out that Northwest Pipeline, too, was regulated by FERC and was a second-tier subsidiary of a parent corporation.

We are unable to indulge in a comparison of the two cases and decide if the two interstate pipelines were treated congruently. *Northwest Pipeline* was not reviewed by this court, and we have no record of that case to make any comparisons even if we were inclined to do so. We do note, however, that there are at least two differences in the facts of the two cases, which the Commission contends supports

the disparate methods of appraising. First, the parent corporation of Northwest Pipeline raised capital by issuance of its own debt and passed it along to its several subsidiaries. In contrast, Questar Pipeline has its own debt. That fact, according to one of the experts testifying for the Division, facilitated the allocation of Questar Pipeline's value from the worth of the parent corporation. Second, when the Commission decided *Northwest Pipeline,* it relied on the fact that the stock of its parent was not publicly traded. Apparently, after the Commission rendered its decision, it was found that the stock of the parent was publicly traded. Thus, at most, Questar's argument simply suggests that the *Northwest Pipeline* decision may be questionable because of the false assumption of the Commission. However, any error in that case does not impact the Commission's decision in the case before us.

■ The third and final attack Questar levies against the Commission's findings is that the findings were only of ultimate facts and that there are no findings of material subordinate factual issues as required by *Milne Truck Lines, Inc. v. Public Service Commission,* 720 P.2d 1373 (Utah 1986). Specifically, Questar complains that the Commission has not provided a "road map" or rational explanation indicating how it weighed the three stipulated values to arrive at a final assessment. We find no error in the findings in this regard. The Commission explained why it rejected the cost method urged by Questar. As detailed earlier in this opinion, the three witnesses for the Division were unanimous in their opinions that the cost method was the least reliable method because it was not reflective of actual market conditions. The Commission found that the market and income approaches were more reflective of actual market conditions. Based on those findings, the Commission fixed the fair market value at $296 million. This was $7 million less than if the income method was totally followed and $16 million less than if the market or stock and debt method was employed. While it is true that the Commission did not spell out the mathematics it used to arrive at its $296 million valuation,

it is readily apparent that in accordance with its findings of fact, it placed heavy reliance on the income and market methods and gave only minor weight to the cost method.

In conclusion, the Commission's findings are supported by substantial evidence and are reasonable and adequate in detail. We have examined other objections to the findings raised by Questar but find no merit to them.

The findings and decision of the Commission are affirmed.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.