**BOARD OF EQUALIZATION OF SALT LAKE COUNTY, State of Utah, Petitioner,**

v.

**SINCLAIR OIL CORPORATION dba Little America Hotel Company and the Utah State Tax Commission, Respondents.**

No. 910050.

Supreme Court of Utah.

May 14, 1993.

David E. Yocom, Mary Ellen Sloan, Bill Thomas Peters, Salt Lake City, for Salt Lake County.

Lewis H. Callister, Dorothy C. Pleshe, Salt Lake City, for Sinclair and Little America.

R. Paul Van Dam, Atty. Gen., Rick Carlton, Asst. Atty. Gen., Salt Lake City, for Tax Com'n.

HOWE, Associate Chief Justice:

The Board of Equalization of Salt Lake County ("County") seeks review of a decision of the Utah State Tax Commission fixing the fair market value of Little America Hotel property in Salt Lake City at $31,000,000 for purposes of the 1988 ad valorem tax.

The property consists of a hotel with approximately 850 rooms, a convention facility, coffee shop, dining room, gift shop, and other related facilities. In 1988, the property was assessed by the Salt Lake County Assessor at $39,149,910. Little America appealed to the Board of Equalization of Salt Lake County, which affirmed the assessor's valuation. Little America then took an appeal to the Utah State Tax Commission. Following a three-day hearing at which expert testimony was adduced, the Commission fixed the fair market value of the property at $31,000,000. The County pursues this review, raising the primary contention that the evidence adduced at the hearing does not support the Commission's order and decision.

At the outset, we note the applicable standard of review. A party alleging substantial prejudice from agency action is entitled to relief only if the agency action is not supported by substantial evidence. Utah Code Ann. § 63–46b–16(4)(g); *Questar Pipeline v. Utah State Tax Comm'n,* 850 P.2d 1175, 1176 (Utah 1993); *First Nat'l Bank of Boston v. County Bd. of Equalization,* 799 P.2d 1163, 1165 (Utah 1990).

In valuing the property, the parties agreed that the income approach should be used. Consequently, most of the testimony

and the evidence adduced at the hearing concerned the hotel's gross receipts and operating expenses. The parties disagree as to how a reserve for replacement of room furniture and fixtures should be allocated.

James W. Hire testified as an expert witness for Little America. He reviewed the hotel's operating statement for 1988 and found that the rooms department expense was somewhat higher than the industry average. He accordingly reduced this category of expense by $700,000 to be consistent with industry averages. After making this adjustment, he arrived at a net income of $3,423,000. However, because the operating statement did not contain as an item of expense a reserve for the replacement of room furniture and fixtures, he further adjusted the operating statement by adding as an expense $444,000 (which was approximately 2% of gross revenues). After making these two adjustments, he arrived at a net income of $2,979,000. He applied appropriate discount and capitalization rates and arrived at a fair market value of the hotel property of $27,265,000.

David W. Evans, Jr., who testified as an expert witness for Salt Lake County, did not decrease the rooms department expense as Hire did. He instead used the actual expense. However, unlike Hire, he did not allow for a separate reserve for replacements in arriving at the net income. He testified that he assumed that because Little America had no plan for the replacement of furniture and fixtures on a continuing preplanned schedule, these expenses must have been otherwise accounted for in the higher-than-typical rooms department expense and other categories of expense shown on the operating statement. On cross-examination, Evans admitted that he had not asked anyone at Little America if a reserve for replacements was included in other categories of expense. Evans arrived at a net income of $3,411,908 and an appraisal of $45,600,000.

In its findings of fact, the Commission held that the actual operating expenses were reasonable and utilized them in determining market value. Finding of fact No. 10 states:

While national averages are important to consider, as long as the facility is competently managed the Commission believes that actual operating revenues and expenses should be used unless there is a strong showing that national averages are a better guideline. Therefore, for the purposes of this proceeding, the Commission has utilized the actual operating experience of Little America as was suggested by the witnesses for Salt Lake County.

Finding of fact No. 12 states:

[I]f the property is being valued on the income approach to value, and replacements have not been included either as an expense or as part of the capitalization or discount rate, then the calculations must include a separate reserve for replacement. The Commission finds that a separate reserve for replacements is necessary and further finds that 2% of revenues is a reasonable amount to allocate to a reserve for replacements.

On this review, the County assails the Commission's findings because it used the actual rooms department expense and then allowed a reserve for replacements. Neither Hire nor Evans did that in their appraisals. By so doing, the County contends, the Commission allowed reserves for replacements in two places: by leaving it in the rooms department expense category and by adding a reserve for replacements expense as well.

We find no duplication. The County argues that if the Commission uses the actual rooms department expense as did Evans, the Commission must also accept Evans' assumption that the higher-than-average rooms department expense includes a reserve for replacement. Kenneth Y. Knight, president of Little America Hotel, testified that the rooms department expense does not include a reserve for replacements. Instead, replacements are accounted for separately as capital expenditures and are not reflected on the operating statement. He further testified that for the years 1984 through 1989, Little America expended an average of $542,000 per year in capital expenditures and expected to incur up to $1,500,000 in capital improvements and repairs in the next two to

three years. He indicated that these capital expenditures are consistent with generally accepted accounting principles and had been reviewed annually by the Internal Revenue Service through its audit procedure. He unequivocally refuted Evans' assumption that a reserve for replacements was accounted for in the "higher than typical rooms expense category and for the higher expense in the other Operated Departments Expense."

Knight further explained that Little America's rooms department expense was higher than the industry average, not because it included a reserve for replacements as Evans and George Christopolous, who testified on behalf of the County, had assumed, but because it provided greater amenities to hotel guests for competitive purposes. Such amenities include cable television ($60,000 per year); "more glamorous shampoos with better packaging"; shower caps, shoe polish, sewing kits ($320,000 per year); additional linens, larger towels, additional laundering costs ($200,000 per year); mints on the pillows ($3,000 per year); courtesy morning newspapers ($40,000 per year); and free breakfasts for frequent guests ($30,000). These expenses, according to Knight, account for the $700,000 excess of Little America's actual rooms department expense over industry average.

Therefore, there is substantial evidence supporting the Commission in allowing for the actual rooms department expense and at the same time rejecting the assumption made by the County's appraisers that those expenses included a reserve for replacements. The Commission allowed the actual rooms department expense because "while national averages are important to consider, as long as the facility is competently managed, the Commission believes that actual operating revenues and expenses should be used unless there is a strong showing that national averages are a better guideline."

The appraisers for both parties agreed that it was proper in the calculation of net income to allow a reserve for replacements. They agreed that if that was not done, a higher capitalization rate should be employed beyond the 10.5% used by the Commission. Simply because the Commission and the County's appraisers allowed for actual rooms department expense, the Commission was not thereafter bound to also accept their factually unsupported assumption that the higher-than-industry average of Little America's rooms department expense included a reserve for replacements. Therefore, the Commission could reasonably allow a reserve for replacements in addition to allowing the actual rooms department expense in arriving at fair market value.

The Commission's decision is affirmed.

HALL, C.J., and DURHAM, STEWART and ZIMMERMAN, JJ., concur.