LARSON LIMESTONE COMPANY, Farrell Larson, and Gerald Larson, Petitioners,

v.

STATE of Utah, DIVISION OF OIL, GAS AND MINING, Respondent.

No. 940440.

Supreme Court of Utah.

Sept. 25, 1995.

Thomas J. Scribner, Donald E. McCandless, Provo, for petitioners.

Jan Graham, Att'y Gen., Thomas A. Mitchell, Asst. Att'y Gen., Salt Lake City, for respondent.

Joseph C. Rust, Salt Lake City, for amicus Associated General Contractors.

DURHAM, Justice:

Larson Limestone Company (Larson) seeks review of an order of the Board of Oil, Gas and Mining (the Board) requiring that Larson file a notice of intent for large mining operations, post a $50,000 reclamation surety, and submit to the jurisdiction of the Division of Oil, Gas and Mining (the Division). We affirm.

Larson extracts limestone from its quarry located in Utah County. Originally, U & I Sugar opened the quarry in the late 19th century to extract high calcium limestone. The limestone varies in quality and thickness, with high quality limestone sandwiched between layers of low quality limestone. To extract the high quality limestone, it is necessary to remove the low quality layers.

On May 12, 1988, Larson filed a notice of intent to commence small mining operations with the Division. Larson reported the total disturbed area[1] to be 4.6 acres because it believed that the Utah Mined Land Reclamation Act, Utah Code Ann. §§ 40–8–1 to –23 (the Act), excluded the low quality limestone as "rock aggregate." Larson based its estimate of disturbed area solely on the volume of high quality limestone extracted from the quarry.

In 1992, the Division started examining Larson to ensure that it was still a small mining operation (under five acres of total disturbed area). After the examination, the Division determined that Larson's mining operations disturbed a minimum of twenty acres. On May 19, 1994, the Division petitioned the Board for an order requiring Larson to file a notice of intent for large mining operations and to post the required reclamation surety of $50,000. The Division also requested that the Board order Larson to cease mining operations and begin reclamation if Larson failed to post the $50,000 surety. The Board so ordered, and Larson sought review.

The first issue raised on review is whether there is substantial evidence to support the Board's finding of fact that Larson is a "mining operation" under the jurisdiction of the Act.[2] The second issue concerns the meaning of the term "rock aggregate" found in subsections 40–8–4(3)(b) and (8)(b) of the Utah Code.[3] Because the first issue is dispositive, we do not reach the second.

Under the Utah Administrative Procedures Act, the reviewing court shall provide relief if the person seeking judicial review has been substantially prejudiced by the agency's basing its actions on a determination of fact that "is not supported by substantial evidence when viewed in light of the whole record before the Court." Utah Code Ann. § 63–46b–16(4)(g); *see also Kennecott Corp. v. Utah State Tax Comm'n*, 858 P.2d 1381, 1385 (Utah 1993) (stating that reviewing courts examine whole record to determine whether commission's finding of fact is supported by substantial evidence); *Zissi v. State Tax Comm'n*, 842 P.2d 848, 853 (Utah 1992) (tax commission's findings were not contrary to substantial weight of evidence). Substantial evidence "is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *First Nat'l Bank v. County Bd. of Equalization*, 799 P.2d 1163, 1165 (Utah 1990); *accord SEMECO Indus. v. State Tax Comm'n*, 849 P.2d 1167, 1173 (Utah 1993) (Durham, J., dissenting). Thus, under the substantial evidence test, this court must determine if the findings of fact were reasonable and rational. *Id.; see also Grace Drilling v. Board of Review*, 776 P.2d 63, 68 (Utah Ct.App.1989) (finding that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). However, examining the

---

1. Disturbed area refers to "land affected," as defined in Utah Code Ann. § 40–8–4(7).

2. Utah Code Ann. § 40–8–4(8)(a) provides in pertinent part that " 'mining operation' means those activities conducted on the surface of the land for the exploration for, development of, or extraction of a mineral deposit."

3. Subsections 40–8–4(3)(b) and (8)(b) exclude "rock aggregate" from regulation under the Act. Subsection (3)(b) reads, " '[D]eposit' or 'mineral deposit' excludes sand, gravel, rock aggregate, water, geothermal steam, and oil and gas as defined in Title 40 Chapter 6." Subsection (8)(b) reads in part, " 'Mining operation' does not include: the extraction of sand, gravel and rock aggregate."

Board's findings of fact does not constitute a de novo review or a reweighing of the evidence. *Questar Pipeline Co. v. Utah State Tax Comm'n,* 850 P.2d 1175, 1178 (Utah 1993).

■ Larson contends that the evidence does not support the Board's finding of fact that Larson is a large mining operation under the Act. Under the Act, a "mining operation" that "disturbs" more than five acres of land is a large mining operation and is required to file a notice of intent for large mining operations. Utah Code Ann. § 40–8–13. The amount of disturbed land under the Act includes:

> (a) on-site private ways, roads, and railroads; (b) land excavations; (c) exploration sites; (d) drill sites or workings; (e) refuse banks or spoil piles; (f) evaporation or settling ponds; (g) stockpiles; (h) leaching dumps; (i) placer areas; (j) tailings ponds or dumps; and (k) work, parking, storage, or waste discharge areas, structures, and facilities.

Utah Code Ann. § 40–8–4(7).

After examining Larson's quarry, the Board found that Larson had disturbed over twenty acres of land within the meaning of the Act. On March 17, 1992, three Division employees went to the Larson quarry to measure the total disturbed area. Using a hip chain and a vehicle odometer, the employees measured twenty-two sites. They measured crushing and loading pads, stockpiles, bench areas, and access roads. To render conservative measurements, the Division excluded the main quarry and two turnout areas from their calculations. It is undisputed by the parties that all the areas measured by the Division employees are used in connection with the mining of high quality limestone. Thus, the Board's determination that Larson is a large mining operation is supported by the facts.

Larson contends, however, that all the sites used to evaluate the disturbed area should be excluded from the Board's calculations because those areas are also part of Larson's rock aggregate operation. Under the Act, the Board does not have jurisdiction over "the extraction of sand, gravel and *rock aggregate.*" Utah Code Ann. § 40–8–4(8)(b)

(emphasis added). According to Larson, the Board has jurisdiction only over the limited physical section of the quarry where the high quality limestone is actually extracted from the low quality limestone. Because this portion of the quarry does not exceed five acres, Larson argues that it remains a "small mining operation" and is therefore exempt from posting the $50,000 reclamation surety. *See* Utah Code Ann. § 40–8–4(15). Larson argues that because the low quality limestone operation is exempt from regulation, none of the roads, bench areas, access roads, or crushing and loading pads that are also part of that operation can be used to calculate the total disturbed area. We disagree.

First, even assuming that a significant part of Larson's operation is a rock aggregate business, Larson's argument fails. It is undisputed that all the surface areas at the limestone quarry are disturbed by the mining of high grade limestone, whether or not Larson also extracts low quality limestone in the same quarry. Furthermore, the methods used to extract high quality limestone are identical to those used to extract low quality limestone. Because there is no way to distinguish between Larson's high and low quality limestone operations, there is no way to allocate the percentages of disturbed areas attributable to each operation. Even if part of Larson's operation is a rock aggregate operation and is excluded from regulation, all the crushing and loading pads, access roads, bench areas, and stockpiles are also used in mining high quality limestone and are fairly included in the Board's disturbed-area calculation. Thus, whatever the definition of "rock aggregate," Larson is still maintaining a large mining operation with over five acres of disturbed land attributable to the extraction of high quality limestone.

■ We also note that Larson's ability to sell its overburden, the low quality limestone, as rock aggregate in a commercial market cannot, standing alone, exempt it from regulation as a "mining operation" under the Act. In Larson's quarry, removal of low quality limestone is necessary when mining high quality limestone because the low quality limestone surrounds the high quality limestone. Since the late 1800s, Larson and its

predecessors in interest have operated this quarry as a limestone quarry, not as a rock aggregate quarry. Larson's argument that it is a rock aggregate company rather than a limestone company because a commercial market exists for its overburden would mean that virtually any "mining operation" could avoid regulation simply by selling its overburden. Most high grade ore does not, of course, lie freely upon the earth's surface unconnected to low quality materials. Under Larson's theory, the operators of a gold mine could remove gold from the limited mining areas, sell their waste rock as rock aggregate, and avoid posting the $50,000 reclamation surety, regardless of the actual size of the area disturbed by the total mining effort. Clearly, the Utah legislature did not intend to permit circumvention of the Act in this fashion.

Finally, we consider deference to the Board's judgment to be appropriate in this case. "[F]indings of fact are accorded substantial deference, and 'will not be overturned if based on substantial evidence, even if another conclusion from the evidence is permissible.'" *Stokes v. Board of Review,* 832 P.2d 56, 60 (Utah Ct.App.1992) (quoting *Hurley v. Board of Review,* 767 P.2d 524, 526–27 (Utah 1988)). The facts demonstrate that Larson's operation consists of both production of rock aggregate and extraction of high quality limestone and that the disturbed areas are attributable to both. The Board's finding of fact that Larson disturbed over five acres of land during the mining of high quality limestone is therefore reasonable in light of the whole record. Accordingly, we sustain its conclusion that Larson is a large mining operation subject to regulation. Affirmed.

ZIMMERMAN, C.J., STEWART, A.C.J., and HOWE and RUSSON, JJ.