AMAX MAGNESIUM
CORPORATION, Petitioner,

v.

UTAH STATE TAX
COMMISSION, Respondent.

No. 880251.

Supreme Court of Utah.

July 18, 1990.

Mark K. Buchi, David K. Detton, Richard G. Wilkins, Salt Lake City, for petitioner.

R. Paul Van Dam, Stephen G. Schwendiman, L.A. Dever, Salt Lake City, and Ronald L. Elton, Tooele, for respondent.

James B. Lee, Kent W. Winterholler, Salt Lake City, for amicus Utah Min. Ass'n.

Bill Thomas Peters, Harriet E. Styler, Salt Lake City, for amicus Utah Ass'n of Counties.

HALL, Chief Justice:

This case is before the court on a writ of review from a Utah State Tax Commission ("Tax Commission") decision determining the 1986 assessed value of petitioner Amax Magnesium Corporation's ("Amax") real and personal property located in Tooele County, Utah.

The Tax Commission originally assessed the value of Amax's property as of January 1, 1986, at $84,332,150. After an informal hearing held on August 25, 1986, the Tax Commission reduced the assessed value of Amax's property to $78,312,895.

The Tax Commission thereafter held a plenary formal hearing to determine the fair market cash value of Amax's property. Amax sought a 20 percent reduction of the assessed fair market cash value of its properties pursuant to Utah Code Ann. § 59–5–4.5 (1953 & Supp.1986). On December 21, 1987, the Tax Commission issued a final decision further reducing the assessed value of Amax's property by approximately $6,000,000 based upon the Commission's finding that dike maintenance should have been expensed rather than included as a capital investment. The Tax Commission confirmed all other aspects of the property tax division's assessment and refused to apply section 59–5–4.5 to reduce Amax's assessment by 20 percent. Amax filed a petition for reconsideration, which the Tax Commission denied by order dated May 31, 1988. Amax then filed a petition for a writ of review with this court on June 29, 1988.

Amax is a company the main function of which is to extract magnesium from the brine waters of the Great Salt Lake. Amax is the fee owner of approximately seven square miles of land in Tooele County, Utah, and maintains improvements on the real property in the form of various buildings and facilities (collectively referred to as the "plant") designed to aid in the extraction of magnesium from the brine.

Amax obtains its concentrated brine solution principally from a series of evaporation ponds located along the shores of the Great Salt Lake and close to the plant. Although Amax owns the plant, the evaporation ponds are located on land owned by the state of Utah and the federal government. Amax pays a royalty to the state of Utah for the nonexclusive right to extract minerals from the Great Salt Lake.

The Tax Commission assessed Amax as a mining operation pursuant to Utah Code Ann. §§ 59–5–3 and 59–5–1 (1953 & Supp. 1986) at 100 percent of its fair market cash value. On appeal, Amax asserts that (1) it is not a mine and therefore not subject to assessment by the state pursuant to section 59–5–3; (2) it should be assessed by Tooele County and receive a 20 percent reduction in the assessment for fair market cash value pursuant to Utah Code Ann. § 59–5–4.5 (1986); and (3) even if Amax is assessed by the state and not Tooele County, it would violate the equal protection guarantees of the Utah Constitution and the United States Constitution for the state not to apply section 59–5–4.5 to Amax's assessment in the same manner as if Amax were assessed by Tooele County.

When reviewing the final decision of the Tax Commission, this court shows no deference to the Tax Commission's conclusion as to the legality or constitutionality of tax statutes because they are conclusions of law.[1] In any challenge to the constitutionality of a tax statute, the petitioner has the burden of demonstrating its unconstitutionality.[2]

## I. TAX ASSESSMENT AUTHORITY

Amax's first contention is that it is neither a mine nor a mining operation and its facilities should not be "deemed appurtenant" to a mining operation, subjecting it to assessment by the Tax Commission[3] pursuant to section 59-5-3. Section 59-5-3 reads in pertinent part:

[A]ll other mines and mining claims and other valuable deposits, ... all machinery used in mining and all property or surface improvements upon or appurtenant to mines or mining claims ... must be assessed by the State Tax Commission.... For the purposes of taxation all mills, reduction works, and smelters used exclusively for the purpose of reducing or smelting the ores from a mine or mining claim by the owner thereof shall be deemed to be appurtenant to such mine or mining claim though the same is not upon such mine or mining claim.

Amax argues that it is neither a mine nor a mining claim as defined in Utah Code Ann. § 59-3-1(8) (Supp.1986), which states: " 'Mine' means a natural deposit of either metalliferous or nonmetalliferous valuable mineral." Although the Tax Commission found that Amax, by its processes, "is obtaining metal products from the brine and, therefore, is effectively 'mining,' " the Commission focused its conclusion of law on the determination that Amax's plant should be "deemed appurtenant" to a mining operation pursuant to section 59-5-3. The issue here is not whether the Amax plant is a mine or mining operation, but rather whether it is "deemed appurtenant to such mine or mining claim...."[4]

A principal rule of statutory construction is that the terms of a statute should not be interpreted in a piecemeal fashion, but as a whole.[5] The plant and the evaporation ponds function as a unit, and the plant is generally dependent upon the ponds for the magnesium it produces.[6]

A second rule of statutory construction mandates that a statute be read according to its literal wording unless it would be unreasonably confusing or inoperable.[7] It is presumed that a statute is valid and that the words and phrases used were chosen carefully and advisedly.[8]

The integration of the plant and the evaporation ponds (mine) in the magnesium extracting process and the practical interpretation and literal wording of the statute make it clear that the Amax plant falls under the category of "all property or surface improvements upon or appurtenant to mines or mining claims." Because the Amax plant is property or a surface im-

1. County Bd. of Equalization of Salt Lake County v. Nupetco Assocs., 779 P.2d 1138, 1139 (Utah 1989); Hurley v. Board of Review of the Indus. Comm'n, 767 P.2d 524, 527 (Utah 1988); Kennecott Corp. v. Salt Lake County, 702 P.2d 451, 455 (Utah 1985).

2. Rio Algom Corp. v. San Juan County, 681 P.2d 184, 191 (Utah 1984).

3. The Utah Constitution requires all mines to be assessed by the state. Article XIII section 11 states: "The State Tax Commission shall administer and supervise the tax laws of the State. It shall assess mines and public utilities and adjust and equalize the valuation and assessment of property among the several counties."

4. Utah Code Ann. § 59-5-3 (Supp.1986).

5. Peay v. Board of Education of Provo City Schools, 377 P.2d 490, 492 (1962).

6. The record reflects that because of the 1983 flood waters and the rising level of the Great Salt Lake for subsequent years, Amax was required to purchase a portion of its brine from outside suppliers.

7. Horne v. Horne, 737 P.2d 244, 247 (Utah 1987); accord Gord v. Salt Lake City, 434 P.2d 449, 451 (Utah 1967).

8. West Jordan v. Morrison, 656 P.2d 445, 446 (Utah 1982); see generally Mills Music, Inc. v. Snyder, 469 U.S. 153, 105 S.Ct. 638, 83 L.Ed.2d 556 (1985).

provement upon or appurtenant to the mine or mining operation, Amax is properly assessed by the Tax Commission pursuant to the Utah Constitution article XIII, § 4 and Utah Code Ann. § 59–5–3.

## II. MEASUREMENT OF TAXABLE CASH VALUE OF PROPERTY

Amax also contends that even if it should be centrally assessed by the Tax Commission, it should be assessed at the same taxable cash value at which Tooele County would assess. Section 59–5–4.5 allows county assessors to assess property at 80 percent of its reasonable fair cash value.[9] Even though section 59–5–4.5 allows county-assessed property to be assessed at 80 percent of its reasonable fair cash value, section 59–5–1 requires that all centrally assessed or state-assessed property be assessed at 100 percent of its reasonable fair cash value.[10]

Specifically, Amax argues that by requiring the state to assess property at 100 percent of value and the county to assess property at 80 percent of value, the legislature has created a law that violates sections 2 and 3 of article XIII of the Utah Constitution, which require equality and uniformity in assessing all real and personal property in the state.[11] Amax also argues that the apparently unequal state and county assessments violate the equal protection of the laws as guaranteed by the Utah Constitution.[12]

### A. Article XIII, Sections 2 and 3

Amax's first contention is that the application of section 59–5–4.5 to county-assessed properties but not to Amax's property is a violation of article XIII, sections 2 and 3 of the Utah Constitution. In *Rio Algom*, we upheld section 59–5–4.5 against a challenge that it violated the tax uniformity requirement of article XIII, section 3 of the Utah Constitution. The plaintiffs in *Rio Algom* claimed that since section 59–5–4.5 reduced the tax assessment to county properties by 20 percent, it caused state-assessed properties to bear the burden of greater taxes to compensate for the reduced taxes paid by county-assessed property owners. We held that absent a showing by the plaintiffs (1) that their own properties were assessed at market value, (2) that they bear a tax burden greater than their pro rata share of the property taxes in the county, and (3) that the "deduction of 'transaction costs' from comparable sales figures or estimates of cost as permitted by section 59–5–4.5 defeats the constitutional objective of establishing 'a valuation [that is] fair and equitable in comparison with and commensurate with the valuation of other kinds of property,'" the constitutionality of the statute will be upheld.[13]

**9.** Section 59–5–4.5(1) (Supp.1986) reads in pertinent part:

When the county assessor uses the comparable sales or cost appraisal method in valuing taxable property for assessment purposes, the assessor is required to recognize that various fees, services, closing costs, and other expenses related to the transaction lessen the actual amount that may be received in the transaction. The county assessor shall, therefore, take 80% of the value based on comparable sales or cost appraisal of the property as its reasonable fair cash value for purposes of assessment.

**10.** Utah Code Ann. § 59–5–1(1)(a) (Supp.1986) states: "All taxable property, except as otherwise provided by law, shall be assessed at 100% of its reasonable fair cash value."

**11.** Utah Constitution article XIII, section 2(1) (as amended 1982) reads: "All tangible property in the state, not exempt under the laws of the United States, or under this Constitution, *shall be taxed at a uniform and equal rate in proportion to its value,* to be ascertained as provided by law." (Emphasis added.) Utah Constitution article XIII, section 3(1) (as amended 1982) reads in pertinent part:

The Legislature *shall provide by law a uniform and equal rate of assessment on all tangible property in the state,* according to its value in money, except as otherwise provided in Section 2 of this Article. The Legislature shall prescribe by law such provisions as shall secure a just valuation for taxation of such property, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its tangible property.... (Emphasis added.)

**12.** Art. I, § 24.

**13.** *Rio Algom,* 681 P.2d at 192 (quoting *United States Smelting, Refining & Mining Co. v. Haynes,* 111 Utah 172, 181, 176 P.2d 622, 627 (1947)).

The present case is distinguishable from *Rio Algom* because it involves similar valuation processes used by the state and county assessors and yet results in different outcomes and because Amax is not challenging the facial validity of the statute, but only its validity as applied to Amax. In *Rio Algom,* the county assessor used the "comparable sales" method of valuation that is very sensitive to inflation, while the Tax Commission used income or other valuation methods that gave very little effect to the impact of inflation.[14]

An additional distinguishing factor is that the premise of section 59–5–4.5, that state assessments and county assessments are not uniform, was not attacked in *Rio Algom.*[15] The very essence of Amax's argument is that the nonuniformity between similarly assessed state and county properties engendered by section 59–5–4.5 violates the uniformity clauses of article XIII, sections 2 and 3 of the Utah Constitution.

One of the purposes for section 59–5–4.5 was a legislative determination that certain transactional costs actually lessen the amount received by a seller under the market value evaluation and, therefore, the true value of the property to the seller is less than the assessment.[16] Another purpose for section 59–5–4.5 was a legislative attempt to equalize the tax burden between state and county assessments. Section 59–5–4.5 was initially passed because inflation caused county-assessed properties to be assessed significantly higher than state properties.[17] The remedy contained in section 59–5–4.5 was to reduce the overall county assessment by 20 percent.

 Two principles govern the law of taxation: (1) that property be assessed at its just value, and (2) that the owners of property bear an equal portion of the tax burden in proportion to the amount of property owned.[18] If both just value and equal proportionality cannot be obtained because some assessments are made at a fixed percentage of true value, then equality must prevail so that the fixed percentage of true value must be uniformly applied.[19]

In the present case, the record reflects that the Tax Commission admits that it assessed Amax at 100 percent of the current fair cash value and that its assessor used the same market value method of assessment used by county assessors. The only reason Amax's property is assessed at 100 percent of value rather than at 80 percent is that Amax's property is required by the Utah Constitution[20] and by statute[21] to be taxed as state-assessed property.

 It strains reason to assert that if assessors using the cost and market appraisal methods overvalue county properties, the same overvaluation would not occur with state properties appraised by the same methods. Assuming that the legislature was correct in determining that the market value appraisal method overvalues property by 20 percent, it would be unconstitutional to apply section 59–5–4.5 to county-assessed properties and not to state-assessed properties. Applying section 59–5–4.5 to the facts of this case, we hold that it would be in violation of the constitutional mandate of article XIII, sections 2 and 3 that all property be taxed in a uniform and equal manner if section 59–5–4.5 is not applied to Amax's property.

### B. Equal Protection

 Our holding that section 59–5–4.5 is unconstitutional as applied to Amax need

**14.** *Rio Algom,* 681 P.2d at 189–90.

**15.** *Id.* at 193.

**16.** Section 59–5–4.5(1); *see also Rio Algom,* 681 P.2d at 193.

**17.** *Rio Algom,* 681 P.2d at 193.

**18.** *Id.* at 194; *Kittery Elect. Light Co. v. Assessors of the Town of Kittery,* 219 A.2d 728, 734 (Me. 1966).

**19.** *Rio Algom,* 681 P.2d at 194; *Kittery Elect. Light Co.,* 219 A.2d at 734.

**20.** Art. XIII, § 11.

**21.** Utah Code Ann. § 59–5–3 (1953 & Supp. 1986).

not be based solely upon a violation of article XIII, sections 2 and 3 of the Utah Constitution, but may also be based upon a violation of equal protection. In *Blue Cross and Blue Shield v. State*,[22] we held that in order to establish a violation of the equal protection component of the Utah Constitution[23] with regard to taxation, a party must demonstrate that a law creates certain classes of persons and that the law is applied differently to each classification without a reasonably related legitimate government purpose.[24]

■ Also in *Blue Cross*, we concluded that the principles and concepts embodied in the federal equal protection clause[25] and the state uniform operation of the laws provision are substantially similar, but as we stated in *Blue Cross:*

[O]ur examination into the reasonableness of economic legislation under article I, section 24 of the Utah Constitution [the uniform operation of the laws provision] is at least as vigorous as that required by the federal equal protection clause, *and probably more so*. Therefore, if the statutes under attack can withstand scrutiny under article I, section 24, they will not be found to violate the federal equal protection clause.[26]

(Citations omitted, emphasis added.) Conversely, if the challenged statute cannot withstand attack under the state constitution, there is no reason to reach the federal question. Such appears to be the case here; hence, we do not reach the federal question.

■ Assuming that the legislatively created classifications of state-assessed property and county-assessed property are legitimate with regard to county properties

assessed by the comparable sales or cost appraisal methods and state properties assessed by other methods, the classifications would not be valid where the state and county properties are both assessed by the comparable sales or cost appraisal methods. The state assessor testified that he used the cost appraisal method of evaluation for Amax's personal property and that it did not differ in basic theory from the cost appraisal method used by county assessors.

The very purpose of section 59–5–4.5 was to allow a 20 percent reduction where the comparable sales or cost appraisal methods of evaluation were used because the legislature found that those methods typically overvalued property by not taking into account transaction costs and other intangibles. If county properties assessed by the cost appraisal method receive a 20 percent reduction and state properties assessed by the same method receive no reduction, then section 59–5–4.5 has created two classes of properties assessed by the cost appraisal method and arbitrarily discriminated against one class merely because it is a state-assessed property. This disparity does not pass the constitutional muster set out in *Blue Cross*. Indeed, there is no reasonable basis for the classification of county properties assessed by the cost appraisal method versus state-assessed properties assessed by similar methods. The objectives of section 59–5–4.5 are not met when the same method is used for both state and county assessments.

Finally, there is no reasonable relationship between the classification and the purpose of the statute, which is to equalize the tax burdens. In fact, when the same as-

22. 779 P.2d 634 (Utah 1989).

23. Utah Constitution article I, section 24 states: "All laws of a general nature shall have uniform operation." This section acts as Utah's equal protection clause. *See Blue Cross and Blue Shield v. State*, 779 P.2d 634 (Utah 1989); *Mountain Fuel Supply Co. v. Salt Lake City Corp.*, 752 P.2d 884 (Utah 1988); *Thompson v. Salt Lake City Corp.*, 724 P.2d 958 (Utah 1986); *Malan v. Lewis*, 693 P.2d 661 (Utah 1984); *Johnston v. Stoker*, 685 P.2d 539 (Utah 1984); *Baker v. Matheson*, 607 P.2d 233 (Utah 1979).

24. *Blue Cross and Blue Shield*, 779 P.2d at 637.

25. Amendment XIV, section 1 states:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without the due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

26. *Blue Cross and Blue Shield*, 779 P.2d at 637.

sessment method is used by the state as is used by the county, section 59–5–4.5 merely aggravates the taxing disparity unless the 20 percent reduction is applied to all state properties assessed by the comparable sales or cost appraisal methods.

## CONCLUSION

Although Amax itself might not be deemed a mine or a mining operation, its property and facilities are properly "deemed appurtenant" to a mine or mining operation under Amax's control, making Amax subject to central assessment by the Tax Commission.

As applied to Amax, section 59–5–4.5 is not only an unconstitutional violation of article XIII, sections 2 and 3, but also a violation of article I, section 24 of the Utah Constitution. We reverse and remand to the Tax Commission for the purpose of calculating the reasonable fair cash value of Amax's real and personal property pursuant to the formula set out in Utah Code Ann. § 59–5–4.5.

HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, Justice, concurring in the result.

*Rio Algom Corp. v. San Juan County,* 681 P.2d 184 (Utah 1984), held that § 59–5–4.5, as applied to county-assessed properties, was constitutional, even though that section provides for a valuation that is 20 percent less than the "gross" market value of a property. The constitutionality of that statute rested on the premise that the reduction in the assessment rate of county-assessed property was necessary to effectuate tax uniformity between inflated county-assessed properties and state-as-

sessed properties. The basic cause of the disparity was that state assessments were made on the basis of formulae that were less responsive to inflation than the formulae used by county assessors.

The Amax properties in the instant case are state-assessed; however, they are not assessed on the basis of the net proceeds formula used to assess mines, but on the basis of a formula typically used by county assessors. As stated, the crux of *Rio Algom* was the fact that state-assessed properties did not shoulder a fair share of the tax burden vis-a-vis the county-assessed properties. That may or may not continue to be the case. Suffice it to say that the parties have not addressed the issue. Nevertheless, I agree that whether an assessment is made by a state assessor instead of a county assessor cannot by itself justify a different assessment. Since the disparity between state-assessed and county-assessed properties arose because of the different formulae used by state assessors for mines, utilities, railroads, etc., and perhaps because of administrative and enforcement reasons, it cannot now be demonstrated that the value of the petitioner's parcels should be assessed at a higher rate than county-assessed parcels when they are valued on a market or cost-of-replacement method. For that reason, I concur in the result reached by the majority.

HOWE, Associate C.J., concurs in the concurring opinion of STEWART, J.