**2021 UT App 130**

# THE UTAH COURT OF APPEALS

COLTEN JOHANSEN,
Appellee,
*v.*
KATHY JOHANSEN,
Appellant.

Opinion
No. 20200234-CA
Filed November 26, 2021

Second District Court, Ogden Department
The Honorable Joseph M. Bean
No. 114900531

Charles R. Ahlstrom, Attorney for Appellant

Jason B. Richards, Attorney for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN FORSTER and DAVID N. MORTENSEN
concurred.

ORME, Judge:

¶1     Kathy Johansen challenges the district court's denial of
her motion to dismiss Colten Johansen's petition to terminate
alimony. She argues that the court erred in finding that Colten's
failure to provide initial disclosures was harmless.[1] We agree
and reverse.

---

1. Because the parties share the same surname, we refer to them
by their first names, with no disrespect intended by the apparent
informality.

## BACKGROUND[2]

¶2    In 2011, Kathy and Colten divorced. The divorce decree required Colten to pay Kathy alimony that was to terminate after 15 years or upon Kathy's remarriage or cohabitation. On October 30, 2018, Colten filed a petition to terminate alimony, alleging that Kathy had been cohabitating with another man (Boyfriend) since at least January 2018. Acting pro se, Kathy filed her answer on November 8, 2018, denying the allegation. A pretrial conference was held the following March, during which the district court set the case for a three-day bench trial to begin in late August 2019. On July 29, Colten, having never filed his initial disclosures, provided pretrial disclosures that included his witness list and his exhibits. The witness list named Kathy, Colten, a private investigator, and Kathy and Colten's daughter (Daughter). On August 6, Kathy moved to dismiss the petition to terminate alimony, alleging that Colten never served initial disclosures as required by rule 26 of the Utah Rules of Civil Procedure. Pursuant to rule 26, Colten was required to provide these disclosures way back in November 2018, 14 days after Kathy filed her answer to his petition. *See* Utah R. Civ. P. 26(a)(2)(A).

¶3    Just before the trial began, the district court addressed Kathy's motion to dismiss. Although the court stated that Colten appeared to have violated rule 26's disclosure requirements, it declined to exclude Colten's witnesses and exhibits because it

---

2. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard and only present conflicting evidence to the extent necessary to clarify the issues raised on appeal." *Linebaugh v. Gibson*, 2020 UT App 108, n.5, 471 P.3d 835 (quotation simplified).

found that the apparent violation of the rule was harmless. Specifically, while addressing Kathy, the court ruled:

> [Colten's] responsibility exists in and of itself to provide those initial disclosures to you. However, there is an exception. If . . . they can show that the failure is harmless or there is good cause, . . . they can overcome that requirement.
>
> There's one other requirement, and that is they don't have to disclose anything to you that would be used for impeachment purposes. And so what they would do is they would simply call you to testify in their case in chief, allow you to testify.
>
> Once you testify in a certain way, then [Colten] is going to say, "Well, we have witnesses."
>
> You'll say, "Wait, those witnesses weren't disclosed to me."
>
> And then he'll say, "These are for rebuttal purposes or impeachment purposes only. We didn't have to disclose impeachment evidence," and so, really, it turns out to be harmless. It's just a matter of the order in which they call their witnesses.
>
> And in calling you first and having you testify first, then they bring in people [such as] a private investigator, your daughter or whoever that would be in the nature of impeachment evidence, which they are not required to disclose under Rule 26.
>
> So the Court finds that while this does appear to be a violation of . . . or I'll say could be a

violation of Rule 26(a)(2) and Rule 26.1(b), the violation would be harmless in that they're not required under Rule 26 or 26.1(b) to disclose impeachment evidence that was retained for impeachment purposes only.

¶4    And a few months after trial, at a hearing on Kathy's motion to amend the court's findings, the court added to its harmlessness finding:

> As a party and as a person involved in a case, to . . . disclose [Kathy] as a potential witness certainly is helpful, but what is she going to do to then go find out from herself what her testimony will be and to find out from herself what her documents may be? She's already got those. She should have that knowledge. That . . . is harmless. . . . I think this a prime and premium example of harmlessness, because her attempts to depose herself or subpoena her own documents or anything like that, that . . . just doesn't make sense at all why that is necessary.
>
> . . . . She had . . . at least 28 days to prepare for the fact that she was going to be a witness.
>
> I believe . . . the [pretrial disclosures filed on July 29, 2019,] also disclosed the impeachment witnesses that were going to testify. So it's not like she didn't know that either.
>
> So all of the purposes of Rule 26 were served under these circumstances[.]

¶5    At trial, Colten first called Kathy to testify. She testified that during the time in question, Daughter and other family members lived with her. She stated that she and Boyfriend had

been dating for approximately two years. Although she did affirm that Boyfriend kept a few dress shirts and a pair of running shoes at her house, and that he occasionally spent the night there, she denied that he had ever lived in the home with her. Colten then presented Kathy with photographs taken from inside her home. One photograph showed a carburetor that Boyfriend had designed and a plaque that he had received as an award for it. Kathy explained that Boyfriend had gifted both to her. The second photograph depicted a laptop and a pair of glasses. Kathy claimed that the laptop was Boyfriend's that he let her borrow and that the glasses belonged to her. The next photograph was taken in her bathroom and showed shaving cream, a razor, and a bag. Kathy claimed that the shaving cream and razor were hers but the bag belonged to Boyfriend, which contained "his stuff to stay overnight." Colten then showed Kathy multiple photos of a computer, her bedroom, and a spare bedroom. Kathy claimed that most of the items depicted in the photographs belonged to her or her children, with the exception of the dress shirts and running shoes that belonged to Boyfriend. Throughout Kathy's testimony, she continued to aver that, while Boyfriend obviously spent time at the house, he did not live there.

¶6     Colten next called himself as a witness. He testified that when he went to pick up his children from Kathy's home, they "would tell me that [Boyfriend] was there the whole time that they would stay there." Colten also testified that Boyfriend's car would be at Kathy's house a majority of the time he came by to pick them up. Colten then offered into evidence a mailed envelope, addressed to Boyfriend at Kathy's address, that he found in a garbage can in front of Kathy's house. Kathy objected to this evidence, claiming that she was not made aware of the envelope when Colten identified exhibits in his pretrial disclosures. The court overruled her objection, stating, "For impeachment purposes those things are not required to be disclosed."

¶7 Colten next called Daughter to testify. She stated that Boyfriend was living with Kathy in the home, that he kept his personal belongings in the home, that he had a key to the home, and that he had complete access to the home at all times. She also claimed that Boyfriend slept in the same room as Kathy, gave Kathy money, and bought groceries. Daughter stated that she had taken the photographs that were shown to Kathy during Kathy's testimony, and that the computer, clothes, and other items mostly belonged to Boyfriend and not to Kathy or to Kathy's children, as Kathy had claimed. Finally, Daughter testified that Boyfriend spent approximately 95% of his nights at the home.

¶8 Colten's final witness was a private investigator. He testified that over the course of the five days he spent surveilling the home, he witnessed Boyfriend carry groceries from his vehicle into the home, take tools from the garage and put them in his truck, have conversations with neighbors in which he presented himself as Kathy's husband, enter the home in the evening and leave the next morning in different clothes, and undertake other actions indicative of Boyfriend living in the home. Colten then offered into evidence the investigator's written report, which the court accepted.

¶9 Kathy called no witnesses of her own. The district court subsequently found that Kathy and Boyfriend had cohabitated from January 2018 until at least November 2018, when Colten served Kathy with the petition to terminate alimony. Accordingly, the court terminated Colten's alimony obligations retroactive to January 2018 and entered judgment against Kathy in the amount of the excess alimony Colten had paid since that time.

¶10 Kathy appeals.

ISSUE AND STANDARD OF REVIEW

¶11    Kathy contends that the district court erred in denying her motion to dismiss Colten's petition to terminate alimony and bar all his witnesses as a sanction pursuant to rule 26(d)(4) of the Utah Rules of Civil Procedure.[3] "We review a district court's interpretation of our rules of civil procedure, precedent, and common law for correctness." *Keystone Ins. Agency v. Inside Ins.*, 2019 UT 20, ¶ 12, 445 P.3d 434. But in reviewing a court's determination with respect to harmlessness and good cause, our review is necessarily deferential. This is because "a court's decision in discovery matters is a discretionary call, and . . . we will affirm such decisions when the court's discretion was not abused, even if we or another court might have made a different decision in the first instance." *Segota v. Young 180 Co.*, 2020 UT App 105, ¶ 22, 470 P.3d 479 (quotation simplified). Accordingly, we will reverse a court's harmlessness determination "only if there is no reasonable basis for the district court's decision." *See Berger v. Ogden Reg'l Med. Center*, 2020 UT App 85, ¶ 15, 469 P.3d 1127 (quotation simplified).

ANALYSIS

¶12    In relevant part, rule 26 of the Utah Rules of Civil Procedure requires parties to serve initial disclosures "without waiting for a discovery request." Utah R. Civ. P. 26(a)(1). These disclosures must include "the name and, if known, the address and telephone number of . . . each individual likely to have

---

3. Kathy also asserts that the district court erred in finding that she had cohabitated with Boyfriend. But because we hold that the court should have barred Colten's evidence and dismissed his petition due to his failure to file initial disclosures, we have no occasion to address this issue.

discoverable information supporting its claims or defenses, unless solely for impeachment . . . ; and . . . each fact witness the party may call in its case-in-chief and, except for an adverse party, a summary of the expected testimony." *Id*. R. 26(a)(1)(A). A party is further required to serve on the opposing party "a copy of all documents, data compilations, electronically stored information, and tangible things in the possession or control of the party that the party may offer in its case-in-chief." *Id.* R. 26(a)(1)(B).

¶13　A plaintiff is required to make initial disclosures "within 14 days after filing of the first answer to the complaint." *Id.* R. 26(a)(2)(A). If a party fails to serve these disclosures, "that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." *Id.* R. 26(d)(4). In cases like the one now before us, "where initial disclosures were not provided at all," a party faces an uphill battle to show harmlessness because otherwise it would shift "an unacceptable burden on the opposing party to closely parse the pleadings and discovery exchanged (if any) to decrypt which individuals even have discoverable information." *Hansen v. Kurry Jensen Props.*, 2021 UT App 54, ¶ 44 n.12, 493 P.3d 1131 (Mortensen, J., and Pohlman, J., concurring). *See also Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) ("An adverse party should not have to guess which undisclosed witnesses may be called to testify."), *cited with approval in Hansen*, 2021 UT App 54, ¶ 44 n.12.

> And even in cases that do not involve "complicated" factual disputes, this burden may still be significant. As just one example, witnesses known to the opposing party may nevertheless speak to other individuals (unknown to the opposing party) about the operative facts of the case. These individuals would thus, unbeknownst

> to the opposing party, have discoverable information and might even be crucial witnesses.

*Hansen*, 2021 UT App 54, ¶ 44 n.12 (internal citation omitted). Thus, "a disclosing party who endeavors, by stratagem or otherwise, to disclose as little as possible faces a significant risk that the disclosure will be found insufficient and the evidence or the witness may not be allowed. To minimize this risk, disclosing parties should be liberally forthcoming rather than minimally compliant and risk the possible consequences of testimony exclusion." *RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 30, 392 P.3d 956 (quotation simplified).

¶14 Here, it is undisputed that Colten completely failed to file his rule 26 initial disclosures detailing the witnesses or the material supporting his claim, insofar as then in his possession, either when initially due or at any time thereafter. Thus, the presumptive sanction was for his evidence to be barred from trial. *See* Utah R. Civ. P. 26(d)(4). But because the district court found this failure to be harmless, Colten was ultimately allowed to present all his evidence at trial. To come to this conclusion, the court made what is in essence a two-part ruling. First, it found that Colten's failure to disclose Kathy as a case-in-chief witness was harmless because she presumably knew what her testimony would be. Second, having found that this was harmless, it essentially piggybacked on that ruling and determined Colten did not have to disclose the remaining witnesses and evidence under rule 26's impeachment exception. We disagree on both counts.

## I. Kathy's Testimony

¶15 Colten argues that the district court's harmlessness ruling in regard to his calling Kathy as a witness was correct because "it is nonsensical to think that Kathy would need to depose or seek document production from herself" and because "[t]here were

many times throughout the history of the case where Kathy was put on notice that her alleged cohabitation was the only issue for trial." All this, Colten argues, put Kathy "at absolutely no disadvantage by her not being listed on Colten's initial disclosures." We disagree.

¶16 Colten and the district court both focus unduly on the fact that Kathy would know what her testimony would be. But both fail to recognize that if Colten had actually served his initial disclosures informing Kathy that she was the only witness on whom his case was based—and the court's order assumes he had to disclose only Kathy—that disclosure could have completely altered Kathy's legal strategy, including her decision on whether she should retain counsel.

¶17 Knowing that Colten was going to make his case based on her testimony would be quite instructive concerning Colten's trial strategy or lack thereof. Having knowledge of this important fact early on, Kathy likely would have deposed Colten or at least sent him interrogatories to ferret out how he believed her testimony would help him prove *his* case-in-chief, given the denial in her answer that she was cohabitating. *See Saudi v. Valmet-Appleton, Inc.*, 219 F.R.D. 128, 134 (E.D. Wis. 2003) ("The importance of . . . witness disclosures and the harms resulting from a failure to disclose need little elaboration. When one party does not disclose, the responding party cannot conduct necessary discovery, or prepare to respond to witnesses that have not been disclosed[.]"), *cited with approval in Hansen v. Kurry Jensen Props.*, 2021 UT App 54, ¶ 44 n.12, 493 P.3d 1131 (Mortensen, J., and Pohlman, J., concurring). Early disclosure of Kathy's pivotal role in Colten's case-in-chief would have led Kathy to discover the "impeachment" witnesses and materials Colten had in reserve and through which he actually intended to prove his case under the guise of impeaching Kathy's testimony, long before he made Kathy aware of this information in his pretrial disclosures just 28 days before trial.

¶18 Thus, had Kathy been informed that she would be Colten's only case-in-chief witness,[4] she would have been given a better opportunity to decide whether she needed to hire an attorney and investigate what Colten's case really hinged on, better preparing herself for trial. Not being provided this information until 28 days before trial—months past the rule 26 deadline for initial disclosures—went against the purpose of rule 26, "which is to preclude parties from trying to gain an advantage by offering 'surprise' testimony at trial that has not been [properly] disclosed." *Arreguin-Leon v. Hadco Constr. LLC*, 2018 UT App 225, ¶ 24, 438 P.3d 25, *aff'd*, 2020 UT 59, 472 P.3d 927. *See also* Utah R. Civ. P. 26 advisory committee notes ("The intent of [initial disclosures] is to give the other side basic information concerning the subjects about which the witness is expected to testify at trial, so that the other side may determine the witness's relative importance in the case, whether the witness should be interviewed or deposed, and whether additional documents or information concerning the witness should be sought."). As we have explained,

> Disclosure of specific facts and opinions is required so that parties can make better informed choices about the discovery they want to undertake or, just as important, what discovery they want to forgo. More complete disclosures serve the beneficial purpose of sometimes giving the opposing party the confidence to not engage in further discovery. But this is only true if the potential for surprise is

---

4. Given our perspective on the narrowness of the impeachment exception under rule 26, contrary to the district court's assumptions, adequate initial disclosures would actually have included much more than just that Kathy would be called as a witness in Colten's case-in-chief. *See infra* Section II.

reduced by at least minimum compliance with the rule 26 disclosure requirements.

*RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 25, 392 P.3d 956. While *RJW Media* dealt with disclosures about expert testimony, these policy considerations apply to all disclosures and to the circumstances present in the instant case.

¶19 Essentially, Colten's and the district court's rationale would lead to the conclusion that it is always harmless to omit from initial disclosures the fact that the plaintiff plans to call the opposing party as a witness because that party will always know their own testimony. But this approach essentially eviscerates the rule that explicitly requires parties to designate the opposing party as a witness if they intend to call the opposing party in their case-in-chief at trial, albeit with a less extensive disclosure duty than with other witnesses. *See* Utah R. Civ. P. 26(a)(1)(A)(ii) (requiring parties to designate "each fact witness the party may call in its case-in-chief and, except for an adverse party, a summary of the expected testimony"). Ultimately, this rationale misses the point that an opposing party can be harmed in this situation. A party may well know the content of their own testimony, but the fact that they will or will not be called as a witness by the other side in the other side's case-in-chief undoubtedly will dictate how they prepare to prosecute or defend at trial. Thus, the district court exceeded its discretion in determining that Colten's failure to provide initial disclosures naming Kathy as his only case-in-chief witness was harmless, and the court should have precluded Colten's use of her testimony due to his clear violation of the rule.

¶20 This is not the end of the inquiry, however, because "when we determine that a trial court erred, we do not reverse unless there is a reasonable likelihood that a different result would have been reached absent the errors," or, in other words, we do not reverse unless the aggrieved party was prejudiced. *Lee*

*v. Williams*, 2018 UT App 54, ¶ 69, 420 P.3d 88 (quotation simplified). *See also* Utah R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). We need not belabor this analysis. It is perfectly clear that had the court excluded Kathy from testifying as Colten's witness, it is certain that a different result would have been reached given that Colten's strategy was to call Kathy and then prove his case by impeaching her testimony. Specifically, had the court precluded Colten from calling Kathy to testify, Colten would have had no testimony to impeach and he would have been unable to prove his case for lack of evidence. Thus, Kathy was prejudiced by the court's failure to exclude her as a witness for Colten.

## II. Remaining Evidence

¶21 Colten argues that the district court did not err in admitting his remaining evidence because rule 26 "does not require a party to disclose witnesses or evidence if it is solely used for impeachment." *See* Utah R. Civ. P. 26(a)(1)(A)(i). Colten also asserts that because "Utah has not held that the 'solely for impeachment' language means that you can only present it when challenging a particular witness's veracity or credibility . . . , the trial court ha[d] the discretion to use impeachment evidence to assist in establishing the core facts of a case." We disagree and we reverse the court's ruling concerning the remaining evidence on two grounds.

### A.     First Ground: Kathy's Testimony

¶22 To be clear, in a technical sense, we need not reach the district court's impeachment ruling because of the nature of its order regarding Colten's ability to call Kathy as a witness. Specifically, the court actually excluded Colten's remaining witnesses and evidence from being used in his case-in-chief for

anything other than impeachment by reason of his failure to make his initial disclosures. Accordingly, under the court's ruling, and had Kathy been precluded from testifying as she should have been, Colten would not have been able to present any of his remaining evidence because the court would allow it *only for the purpose of impeaching* Kathy. And because we have determined that the court exceeded its discretion in allowing Colten to call Kathy as a witness despite not having initially disclosed his plan to do so, it necessarily follows that none of Colten's remaining witnesses and evidence should have been allowed. Because Kathy could not properly have been called, there would have been no testimony to impeach. Kathy was thus necessarily prejudiced because, without this evidence, Colten could not have proven his case, and the district court should have then dismissed his petition. *See Lee v. Williams*, 2018 UT App 54, ¶ 69, 420 P.3d 88.

### B.      Second Ground: Limits of Impeachment Exception

¶23    We also reverse the district court's ruling on the independent ground that, even if it was not error to allow Kathy to testify in Colten's case-in-chief, the court misapplied the rules of civil procedure in allowing Colten to present his remaining witnesses and documents as impeachment evidence. Regardless of whether Kathy should have been permitted to testify, the court still erred in allowing Colten's remaining evidence under rule 26's impeachment exception.[5]

---

5. Because we determine that the impeachment exception did not apply to Colten's remaining witnesses and the documents and other tangible things he presented at trial, we do not address the additional argument Colten advances, i.e., that "the trial court ha[d] the discretion to use impeachment evidence to assist in establishing the core facts of a case."

¶24    Rule 26 states that

> (a)(1) . . . a party shall, without waiting for a discovery request, serve on the other parties:
>
>> (A) the name and, if known, the address and telephone number of:
>>
>>> (i) each individual likely to have discoverable information supporting its claims or defenses, unless solely for impeachment, identifying the subjects of the information; and
>>>
>>> (ii) each fact witness the party may call in its case-in-chief and, except for an adverse party, a summary of the expected testimony;
>>
>> (B) a copy of all documents, data compilations, electronically stored information, and tangible things in the possession or control of the party that the party may offer in its case-in-chief . . . .

Utah R. Civ. P. 26(a)(1).

¶25    "When we interpret a procedural rule, we do so according to our general rules of statutory construction." *Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, ¶ 18, 238 P.3d 1035. Thus, "we start by examining the ordinary meaning or usually accepted interpretation." *Id.* If we determine the language is unambiguous, then the inquiry ends there. *Pilot v. Hill*, 2018 UT App 105, ¶ 11, 427 P.3d 508, *aff'd*, 2019 UT 10, 437 P.3d 362. *Cf. Amax Magnesium Corp. v. Utah State Tax Comm'n*, 796 P.2d 1256, 1258 (Utah 1990) ("[S]tatutory construction mandates that a statute be read according to its literal wording unless it would be

unreasonably confusing or inoperable."). In undertaking this inquiry, we presume "that the words and phrases used were chosen carefully and advisedly." *Amax Magnesium Corp.*, 796 P.2d at 1258.

¶26 Based on the plain language of rule 26, the "solely for impeachment" exception is found within subsection (a)(1)(A)(i), which addresses only "individual[s] likely to have discoverable information supporting [the party's] claims or defenses." Utah R. Civ. P. 26(a)(1)(A)(i). This exception does not appear in subsections (a)(1)(A)(ii) or (a)(1)(B), which deal with witnesses and documents and other tangible things that a party plans on using in its case-in-chief. Thus, because we presume that the drafters of the rule used the words and phrases in rule 26 "carefully and advisedly," *Amax Magnesium Corp.*, 796 P.2d at 1258, an impeachment exception cannot be read into subsections (a)(1)(A)(ii) and (a)(1)(B) to allow for witnesses or documents and tangible things a party plans to use in its case-in-chief to not be initially disclosed even if their use is focused on impeachment. Therefore, an analysis of whether a witness should have been disclosed turns initially on whether that witness will be called in a party's case-in-chief or held in reserve as a possible rebuttal witness whose testimony is "solely for impeachment."

¶27 This interpretation comports with the purpose of the rule as a whole, *see id.* ("A principal rule of statutory construction is that the terms of a statute should not be interpreted in a piecemeal fashion, but as a whole."), which is to maximize disclosure "to preclude parties from trying to gain an advantage by offering 'surprise' testimony at trial that has not been [properly] disclosed," *see Arreguin-Leon v. Hadco Constr. LLC*, 2018 UT App 225, ¶ 24, 438 P.3d 25, *aff'd,* 2020 UT 59, 472 P.3d 927. If we were to allow a party to forgo disclosing in initial disclosures the witnesses and documents it planned to use in its case-in-chief and then slip them in at trial under the

impeachment exception, then we would not be following the clear language of the rule, much less honoring its purpose.[6]

¶28 We first address the documents and tangible things the court allowed and then turn to the witnesses Colten was permitted to call at trial.

1. Documents and Tangible Things

¶29 Once Colten filed his petition, under subsection (a)(1)(B) any documents and tangible things in his possession that Colten intended to present in his case-in-chief were required to be disclosed to Kathy in initial disclosures. In making initial disclosures, no impeachment exception exists allowing such evidence not to be disclosed. Therefore, all the pictures Colten presented from inside Kathy's home and the private investigator's report should not have been allowed at trial because Colten failed to disclose any of it to Kathy in his initial disclosures.[7] Utah R. Civ. P. 26(a)(1)(B); *id.* R. 26(d)(4).

---

6. This does not mean that substantive evidence can never be presented through impeachment witnesses. It simply means that if a party knows in advance that it wishes to present such evidence in its case-in-chief, it must be disclosed as required and cannot be sprung on the opposing party at trial, or even during pretrial disclosures, which come quite late in the course of litigation.

7. There is some confusion in the record regarding when Colten obtained the private investigator's report. At a hearing before the district court, Colten asserted that he could not have included the report in his initial disclosures because he did not have the report at the time initial disclosures were due, i.e., 14 days after Kathy filed her answer on November 8, 2018. *See* Utah

(continued…)

2.     Witnesses

¶30    Colten, Daughter, and the private investigator were all witnesses Colten called as part of his case-in-chief for purposes of subsection (a)(1)(A)(i) of rule 26. They were not merely "individual[s] likely to have discoverable information supporting [his] claims" who had nothing to offer beyond impeachment evidence, which would make them exempt from disclosure under subsection (a)(1)(A)(ii). On the contrary, as witnesses used exclusively in Colten's case-in-chief, their contact information and a summary of their expected testimony was required to be served on Kathy in initial disclosures. *See id.* R. 26(a)(1)(A)(ii).

---

(…continued)

R. Civ. P. 26(a)(2)(A). This assertion is questionable given that the report is dated November 7, 2018. But this confusion is ultimately immaterial to our analysis because Colten had a continuing duty to disclose it as part of his initial disclosures, and Colten clearly had the report at some point soon after Kathy filed her answer. *See Williams v. Anderson*, 2017 UT App 91, ¶ 15, 400 P.3d 1071 ("Parties . . . have a continuing obligation to supplement disclosures with 'additional or correct information' if they 'learn[] that a disclosure or response is incomplete or incorrect in some important way' and 'if [the additional or correct information] has not been made known to the other parties.'") (alterations in original) (quoting Utah R. Civ. P. 26(d)(5)). And rule 26(d)(4)'s evidentiary exclusion sanction is equally applicable to a party who fails to supplement their initial disclosures with information that comes into their possession after the time period for filing their initial disclosures has passed. *See* Utah R. Civ. P. 26(d)(4) (stating that a party may not use undisclosed witnesses or information if they "fail[] to disclose or to *supplement* timely a disclosure") (emphasis added).

¶31    Colten's trial strategy was to first call Kathy in his case-in-chief, and she categorically denied that she was cohabitating with Boyfriend. Continuing with his case-in-chief, Colten then called himself, Daughter, and the private investigator to testify that Kathy was, in fact, cohabitating with Boyfriend.[8] The court allowed these witnesses to testify in Colten's case-in-chief even though they had not been disclosed in initial disclosures because it ruled that they were used solely for impeaching Kathy's testimony and did not have to be disclosed under subsection (a)(1)(A)(i). This reasoning was flawed because this subsection's "solely for impeachment" exception did not properly come into play.[9] While these

---

8. The district court labeled these witnesses as rebuttal or impeachment witnesses. But whether their testimony was for impeachment or not, they were still part of Colten's case-in-chief as Colten called them immediately after Kathy testified to establish Kathy's cohabitation before resting his case.

9. Subsection (a)(1)(A)(i)'s "solely for impeachment" exception is applicable only in the much more limited trial context when evidence presented by the opposing party takes an unexpected turn and the party wishes to impeach that testimony on rebuttal with individuals it knew likely had discoverable information but planned to use only if they were needed to rebut certain testimony, i.e., the individuals were not ones the party intended to call in its case-in-chief. Take, for example, a medical malpractice case brought against a doctor by a plaintiff. Before trial, the parties serve their initial disclosures and conduct discovery, and all that information indicates that the doctor had one nurse assisting during the procedure. But, at trial, the doctor's story changes, and the doctor testifies that there were two nurses assisting. To impeach that testimony, the plaintiff could then present testimony from a nurse that plaintiff had contacted previously, but that plaintiff had not disclosed in

(continued…)

witnesses may have been impeaching Kathy's testimony, they were still called in Colten's case-in-chief, before Kathy presented any evidence in her defense, and were thus fact witnesses Colten intended to call in his case-in-chief for purposes of subsection (a)(1)(A)(ii), thus requiring that they be disclosed in initial disclosures. This is borne out by the fact that had Colten simply called Kathy in his case-in-chief and then rested, his case would have been dismissed for lack of evidence. Rather, after he called Kathy to testify, he continued his presentation of witnesses and called himself, Daughter, and the private investigator to establish that Kathy was cohabitating—all as part of his case-in-chief.

¶32 Based on the plain language of rule 26, the district court erred in allowing Colten to call any of his witnesses or to present the photographs and investigator's report because it was all used in Colten's case-in-chief and was required to be disclosed in

---

(…continued)

initial disclosures, to testify that on this occasion, the doctor had only one nurse assisting in the relevant procedure. In this situation, the impeachment witness would qualify as a witness under subsection (a)(1)(A)(i) because the witness was not used in the plaintiff's case-in-chief but rather was, for purposes of initial disclosures, just an "individual likely to have discoverable information" that was used "solely" to impeach the doctor's testimony. Utah R. Civ. P. 26(a)(1)(A)(i). This is not the case here. Rather, Colten knew from the beginning that he, Daughter, and the private investigator were critical to his case-in-chief and were not simply individuals with discoverable information who would be used, if at all, solely to impeach Kathy because, without them, his case could not be proven. Colten always intended to call them in his case-in-chief, and he was therefore required to identify them in his initial disclosures. *Id.* R. 26(a)(1)(A)(ii).

initial disclosures pursuant to subsections (a)(1)(A)(ii) and (a)(1)(B). Yet, the court essentially allowed Colten to present his entire case-in-chief under subsection (a)(1)(A)(i)'s impeachment exception, which is an incorrect use of that extremely limited exception, constituting reversible error.[10] Because Colten was required to serve his initial disclosures detailing this information and failed to do so, Colten has to show that such failure was harmless to Kathy or that his failure to disclose was a result of good cause. *See id.* R. 26(d)(4). He has not made that showing, and Kathy was prejudiced by the district court's erroneous ruling because without the evidence Colten presented during his case-in-chief, he could not have proven that Kathy cohabited with Boyfriend. *See Lee v. Williams*, 2018 UT App 54, ¶ 69, 420 P.3d 88.

## CONCLUSION

¶33    The district court erred in allowing Colten to call his witnesses and present his documents at trial. Kathy was harmed

---

10. This result may seem harsh, but as this court recently stated, if litigants "are tempted to play fast and loose with our discovery rules," then they run the risk of losing it all. *Hansen v. Kurry Jensen Props.*, 2021 UT App 54, ¶ 49, 493 P.3d 1131 (Mortensen, J., and Pohlman, J., concurring). And the fact that we sometimes uphold a district court's ruling in this regard should "offer no solace or refuge" to parties if they determine to ignore the rules. *See id.* Our discovery rules are written to be followed, and if parties determine that they want to skirt around them, then let them be warned once more that they "face[] a significant risk that [an untimely, inadequate, or skipped] disclosure will be found insufficient and the evidence or the witness may not be allowed." *See RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 30, 392 P.3d 956.

by not being informed in the required initial disclosures that she would be called as a witness by Colten in his case-in-chief, and the court misapplied rule 26 of the Utah Rules of Civil Procedure in allowing Colten's remaining witnesses to testify under the "solely for impeachment" exception because they were witnesses used in Colten's case-in-chief. The court also erred in allowing Colten to present any of his documents and tangible things under the inapplicable impeachment exception. We therefore vacate the judgment against Kathy and remand with instructions to dismiss Colten's petition to terminate alimony.

––––––––––